(Court of Common Pleas, Hamilton Co.)

RICHARD BERESFORD, v. ETHAN B. STANLEY, ET AL.

---

"In civil actions if the plaintiff's evidence discloses a scintilla, the court shall ordinarily submit the issue to the jury, even though satisfied that a verdict in favor of plaintiff could not be suffered to stand.

But an action to contest a will being inaugurated with a legal presumption in favor of the will, there is nothing for the jury, until such evidence is brought as in the judgment of the court is susceptible of unseating this presumption, and of supporting a verdict against the will, should such be rendered."

---

The action was prosecuted for the purpose of contesting the will of Elizabeth Bates, deceased. At the trial proponents first offered the will and the probate thereof, and rested. The contestants then offer-

ed all their evidence and rested their case, and thereupon the defendant proponents moved for instructions to the jury as follows:

"That the evidence offered does not tend to prove want of capacity to make the will in issue or the exercise of fraud or undue influence in the making of the will, or any other act or omission to impair its validity, and that the jury shall return a verdict sustaining the will."

Which motion was argued by counsel for the respective parties therein, and after due consideration the court sustained said motion in the following decision:

WRIGHT J.

The purpose of a will is to indicate, in advance, who shall have the maker's property after his death; wherefore the maker should have sufficient recollection and understanding to contemplate the persons who will be left after his death. The effect of a will is to dispose of the maker's property at his death; wherefore he should have mind enough to know what property he has to dispose of, and what the act of making his will means; he must know that he is making his will; he must be capable of understanding to whom he gives his property and in what proportions, and whom by his will he is depriving of it; he must be capable of knowing the nature and comparative values of his properties, of remembering the number and of understanding the identity of those who are the natural objects of his bounty, their deserts in reference to their conduct toward and treatment of him, their conditions and necessities; and he should be capable of retaining these facts in his memory long enough to have his will prepared and executed. If he is able to do all this, then his will is valid, no matter to what extent in other repects he is mentally or physically impaired.

By undue influence the law means an influence which substitutes the wishes of another for the judgment of the testator.

In an ordinary cause the plaintiff, who seeks to move the Court to take action in his favor, must bring forward evidence in support of his proposition. Evidence may vary through all degrees of probative force, from the kind of evidence that is satisfying and conclusive to evidence that is vague and uncertain; if any kind of evidence be brought which tends, however weakly, to prove the plaintiff's proposition, the jury must, by the law of Ohio, decide, and not the court; even though the court be satisfied that no verdict ought to stand on such evidence, yet still must the court submit the cause to the jury, for the plaintiff has brought a "Scintilla." Now this is the kind of "Scintilla" that shall be held in mind throughout the following discussion about "Scintillas", as set against "presumptions."

The motion at once involves the question of the application of the "Scintilla" rule, as known to the law of Ohio; and I

inaugurate the argument thereof by some short reference to what in evidence are known as presumptions; these are divided into three main and principal classes; conclusive presumptions of law, disputable presumptions of law, and presumptions of fact. If a fact be in issue and a condition of things be proven which either could not exist, generally does not exist, or for reasons of public policy ought not to exist unless the ultimate fact be true, the law lays hold of the proven condition of things as sufficient to establish the ultimate fact; and therein is the foundation of the doctrine of presumptions. In some instances the law, upon proof of a certain condition of things, will thereupon immediately assume the ultimate fact to be established and will permit the hearing of no evidence to gainsay it; these are conclusive presumptions of law; as, if at common law the issue was whether a grant of certain land had been made, there if one party prove that he had been in open and adverse possession of the land for a period of twenty-one years, the law would upon this condition of things presume that there had been a grant, and would permit no evidence to gainsay it.

In other cases the law will assume that certain conditions, when proven, shall be held to establish the ultimate fact unless the contending party be able by his opposing proof to overcome the natural inference, and to that end will permit him to offer evidence thereon; these are when there is such an intimate connection between facts, as that the general experience of mankind has demonstrated that it is safe to associate the two facts together, and upon proof of one to take the other for granted, unless in individual particular instances a reason appears why the connection should not be made; there are some certain kinds of facts which go so usually together, hand in hand, that the law has adopted as its rule, the rule deduced by the general experience of mankind, and upon proof of one such fact, presumes the other to exist. As, let it be proven merely, that A is a human being, and the law, based upon the experience of mankind, lays hold upon that fact and raises a presumption that A is of sound mind; this is a disputable presumption of law, and means that A shall always be taken to be of sound mind until a reason be shown why the rule of general experience that men are sound in mind, should not apply to his particular case.

While originally no more than a rule of evidence administered by the early English courts, much of the ancient doctrine of presumptions has passed out of the sphere of evidence and into the realm of the substantive law. So with the presumption of soundness of mind; the province ends in establishing the fact that a certain person existed; this having been established by rules of evidence, the substantive law lays hold of the case where the evidence left off, and that person is then in law taken to be of sound mind until the contrary appears.

As soon as there grows up a presumption of law in a case, that case becomes different from the generality of cases in this: that the presumption shall control and decide the case, unless there be affirmatively shown a reason which makes that individual case an exception to the general rule which the law has evolved for such cases.

There is a difference between the right of a plaintiff who has presented only the "Scintilla" of evidence, and the right of the plaintiff who has presented a kind of evidence so strong and forceful as that the law lays hold of it and raises a legal presumption in his favor; suppose there be those two kind of cases, with the defendant offering no evidence at all in either. In the one, or case of the "Scintilla," the court may do no more for the plaintiff save to leave the matter to the jury for them to say whether he has proven his right; but in the other, or case of the presumption of law here the court, in the absence of defendant's evidence shall positively announce and declare the plaintiff's right to be established, and shall in words mandatory impose upon the jury the duty of finding in his favor. In the absence of opposing evidence a presumption per se controls the case; while in the absence of opposing evidence a "Scintilla" has no such power. Wherefore it is plainly seen that a "Scintilla" is not as good in law as a presumption; now is it in the law that such a momentous thing as a legal presumption shall be required to strive against a mere scintilla, whereof we have seen that the law firmly holds the one to be of more force and virtue than the other? After the law has so sanctioned one side of a case as that a presumption of law is raised in its favor, can the presentation of a mere scintilla be sufficient to de-characterize the presumption, and degrade it to a matter of mere evidence again? If so, then a presumption, when set against a scintilla, is not, as a matter of law the more forceful of the two; if a legal presumption must be by a jury weighed against every mere scintilla, then it loses the dignity of a presumption, retrogrades and withers at the mere presence of the scintilla; and however much the scintilla may vary in degree of vagueness and uncertainty, there is no decrease in its power and ability to overset a legal presumption. The presumption must lose its character at the presence of the merest shadow of proof, if the court is not authorized to declare that as matter of law, it of the two shall control.

Does the law which vests the court with authority to say what evidence shall be sufficient to raise a legal presumption

·peremptorily strip the court of all authority to say that certain evidence is insufficient to overthrow a presumption? And here let it be not forgotten that there come more cases than one into court to which the rules of law must be applied. The ·application of a rule varies with the diversity of cases; a rule clearly applicable in one case, begins to lose applicability ·to another case, as soon as the second ·case begins to lose identity with the first case; so that after a while two cases will so differ as that the rule applicable to one, will be no rule at all for the other.

Now let us conceive a case where the evidence brought against a legal pre·sumption is of such nature as that no possible construction of it can overcome the presumption, and let us conceive an·other case where the evidence is of such nature as that it is susceptible of two constructions, one of which would overcome the presumption provided that particular construction is attached; now it is ·clear that these two cases are different, and if they are different the same rule cannot determine both; so that it is clear enough that the rule which decides one must be different from the rule which decides the other; and the difference is seen thus; where there is a question about what construction shall be attached to the evidence, that case is for the jury, and it ·makes no difference how unreasonable it may seem to attach that construction, provided the evidence is susceptible of the construction; still the jury must decide that case. But in the other case where there is no possible construction which can serve to overthrow the pre·sumption, here the case differs the rule to decide it must be different, and the difference is that the court shall say and not the jury; what construction can by possibility be assigned to evidence is a question of law for the court; whether one or the other of possible constructions shall be assigned is a question of fact for the jury; this is no more and no less than the rule of competency, which is always for the court; whether certain evidence can be assigned a probative force ·tending to a certain conclusion is for the court. If it is susceptible of that ten·dency, then whether that conclusion *shall* be assigned is for the jury. And this ·brings us to the difference between ulti·mate facts and evidential facts. By ul·timate facts I mean those facts which are ·essential to be found by the jury before verdict; by evidential facts I mean those facts which the jury are entitled to consider as proof of the ultimate fact. Now if you take all the ultimate facts which the jury has found, then it is a question for the court to say what the law decrees between the parties on those facts. In other words, when all the ultimate facts are conceded, the rest is a question of law for the court.

Now put these propositions together and you have,

First: The tendency of evidential facts is for the court.

Second: Whether an assignable tendency shall or shall not be attached is for the jury.

Third: The finding of ultimate facts is for the jury.

Fourth: The result which the ultimate facts are susceptible of producing in law after they have been found, is a question for the court.

So that it all resolves itself into this: that the power and capability of which facts are by possibility susceptible in the way of proof is for the court. If we deal with evidential facts, it is for the court to say how they *can* tend, for the jury to say how they *do* tend within the limits set by the court. If we are dealing with ultimate facts, then it is for the court to apply the law to these ultimate facts, and to say what disposition of the rights of parties the law makes on those facts; which carries with it the authority of the court to say whether or not the ultimate facts when found are capable of unseating the presumption which the law has already raised. fI they are capable of unseating it, then let the jury say whether they shall; but, when called upon the court must say whether they are capable, and if they are not, then as a matter of law must the presumption prevail. So that whether certain facts can by possibility be susceptible of unseating a legal presumption is a question of law for the court; and this is, that the court has power to say that certain evidence is not in law sufficient to overcome a legal presumption.

When facts are presented as true, no one contends but that it is a question of law for the court to say whether or no those facts are sufficient to raise a presumption of law. Now, after a presumption of law has been evolved ipso jure the court has authority to say whether or not the evidence brought against it, is in law sufficient to overcome the presumption; otherwise the whole doctrine of presumption is but a parasite clinging to the body of the law and no part of the law itself. If the evidence brought against a presumption is of such force in proving power that it is susceptible of an interpretation and ponderability which can by possibility prevail over the presumption, that is one thing, and such a case must be left to the jury to say whether or not that certain interpretation and weight should be attached; but if the evidence brought against a presumption is so lacking in force of proving power as that under no interpretation can such ponderability be accorded to it in law which will prevail over the presumption, this is quite another thing, and there is nothing at all to be left for the jury to decide. For in this instance

you have a legal presumption weighed against but a scintilla, and as matter of law the presumption is better than the scintilla, as a matter of law, outweighs the scintilla, as a matter of law prevails against the scintilla; and the court, the mouthpiece of the law, is authorized to so declare.

While we must secure and guard the right of contestants to assail a will, shall we therefore be unmindful of the right of the proponents? Shall we overlook and forget the rights of proponents and of testators to have wills stand until a reason is shown why they should not stand? Shall we begin a trial by raising a presumption in favor of proponents, then hear the evidence of contestants, and blinding our eyes to it call upon the proponents to produce more evidence besides a legal presumption, to sustain the will, without looking whether the contestant's evidence is sufficient in law to overcome the presumption? Surely no; and in determining whether in law that evidence can overcome the presumption we must to a certain extent deal with its ponderability; not by saying what weight *shall* it bear in the particular case, but by asking what weight *can* it bear; and whether it can have a sufficient weight is for the court; if it can, then whether it shall be assigned that weight is for the jury.

So that the only logical and sensible rule is this; that in cases where a legal presumption has been raised on one side, and the opposing evidence is in law susceptible of a force which will support a verdict against the presumption, here the jury shall say whether or not that construction should be attached; but in cases where the opposing evidence is not susceptible of a force which would as matter of law support the verdict, here the presumption must, ex vi termini, control, and be declared controlling, by the court.

When a common cause is tried, and the evidence only tends to prove a party's right, then let the jury decide whether the evidence is sufficient; but in causes where at the very inception the law raises a presumption, then there is nothing for the jury, until such weighty evidence is presented as in the good sense of the court will warrant a verdict against the presumption, should such be found.

Particularly is this true in cases of wills, where the issue is not a matter reaching no further than to embrace the rights of interested parties; the court could not lawfully set aside a will upon consent of all interested parties although the issue in other kinds of cases is subject to be disposed of by mere agreement and consent. The right to make a will and to dispose of one's estate thereby is an inate, absolute personal right given by law, and what rights the law gives, the law will secure; it is the business of courts to recognize rights which the law gives, and to maintain and preserve rights

which the law secures; it is public policy, it is the policy of the state, that this right should not, by courts, be suffered to be heedlessly trifled with, frivously sported with, and without even slight ceremony annulled. The court should protect from infraction every right which the law gives, and should protect the right of every person to make a will until there is in the mind of the court at least a suspicion of the presence of undue influence or incapacity. The statute admonishes the court thereto in these words:

Revised Stat. Section 5914. "Any person of full age and of sound mind and memory, and not under any restraint, having any property * * * may give and bequeath the asme to any person by last will and testament lawfully executed."

My mind would therefore most willingly be led to the conclusion that the scintilla rule has no application in actions to contest wills, which are inaugurated with a legal presumption in favor of the will, a presumption in favor of the mental soundness and capacity of the testator, a presumption against undue influence.

But the decision of the motion does not of necessity put me to this conclusion; for in support of the claim of undue influence there is not so much as even a scintilla of evidence produced. The evidence shows that certain of the proponents were so circumstanced as to have had opportunity for the exercise of undue influence, yet there is no spark of evidence which tends to prove that undue influence was exerted. Upon the issue of mental unsoundness there is no single fact in all the evidence produced, which in the least degree, tends to prove it; the only evidence from laymen which was in that direction is in the testimony of Gen. Ryan and Chas. Cavagna who each say that in their opinion the testatrix had not sufficient mental capacity to understand the extent and value of her property. I now adjudge that neither of these witnesses distinguished between whether she had capacity to know, and whether as matter of fact she did actually know; an individual may not know the extent and value of his estate, and yet may have capacity to know and understand, if he set himself at it to find out. But even had these opinions been with unmistakeable emphasis expressed, it is not enough; for mere opinion of non-experts, which lack the support of some indicia of fact, are not in law of sufficient moment to amount to substantive proof of unsoundness of mind or of incapacity.

The only expert evidence touching the inference of incapacity, is from Dr. Hinckley and from him we have heard that which is purely expert testimony, that is to say, a diagnostication of Mrs. Bates, not as the witness himself observed her to be, but as an alleged criterion of her individuality was sought to be displayed to him through the medium of an hypo-

thetical question. It has upon more occasions than one been observed by courts that the isolated opinions of experts, based not on solid facts, but upon the distorted vagaries of an abortive imagination, cannot serve as substantive proof; expert testimony ex necessitate rei fluctuates from one to the other of these extremes; and while of great and incalculable value when based upon sound and probative facts, is forceless as evidential matter, in their absence. Let it be understood that no reflection is made upon Dr. Hinckley's testimony, for it is here announced to be exact and accurate, and to be fully maintained by the hypothesis which he assumed; yet this fractional hypothesis bears not even scant analogy to the integralty of Mrs. Bates' nature, as the evidence conclusively establishes it. Let there be conceded for the expert testimony all probative force which it can claim for itself, and it will establish only that Mrs. Bates was a victim of hysterical aphonia; the evidence shows no incompatibility between aphonia and the fullest and most complete testamentary capacity. Hysterical aphonia in the opinion of the expert may sometimes indicate nervous debility; he does not say that it all the time so indicates, and if it be conceded that there was present in Mrs. Bates such nervous debility as he describes, yet there is nothing to indicate that this condition at all affected her testamentary capacity. It is a matter of inference to say that she suffered with aphonia, another inference based solely upon the first inference, that her nervous system "lacked tone"; and a third inference depending upon both of two other inferences, that her capacity was affected; and so with regard to the hernia; some courts have so championed the cause of adherence to common sense in the administration of justice as to unflinchingly and unhesitatingly declare that an inference based upon another inference is not evidential matter.

Thompson v. Kyner, 65 Pa. St. 380.

"The theory of the plaintiff's case rests upon a presumption from a presumption, which is not allowable; namely, that the testator, being an old man, must be presumed to have been weak, and therefore it is to be presumed, that the defendant, who was taking charge of his farm, and was an active minded man, coerced his will. Weakness alone proves neither want of capacity nor undue influence. Hundreds of cases show that mere weakness does not incapacitate the making of a will, and it must not be implied from such a circumstance alone that a devisee has been guilty of a wrong and fraud in procuring a devise of property which it might be supposed he would not have been likely to have obtained, except by coercion of his will. Such a thing would be a fraud, not only upon the testator, but upon his heirs equally entitled to his beneficence as was the intermeddling procurer of the devise to himself, and it is not to be presumed, but is to be established by competent and clear evidence."

Gerwe v. Consolidated Fire Works Co., Hamilton County Circuit Court, 12 C. C., 420.

Let it not be imagined that the court is either ignorant or forgetful of the fundamental rule that the drawing of inferences is for the jury; yet this is a general rule which must be applied by the court to each case as it is presented; the law does not undertake to determine each individual case by the unsuited application of a general rule, but constitutes courts for the very purpose of deducing from general rules an application suitable for particular and individual cases; in the language of Judge Gholson, in Skelly v. The Bank, (9 Ohio St. 614) courts are constituted to decide cases, not abstract questions of law.

Now how shall the general rule, that the drawing of inferences is for the jury, be applied to the case at bar?

The results which attend the proceedings of courts are of such grave importance to the parties concerned, that all care should be taken to avoid mistake; neither courts nor juries are possessed of any personal knowledge concerning the justness of controversies brought before them, yet of necessity must be informed before deciding; all matters which have a tendency to lead them to the truth, they should be permitted to hear; all matters which tend not to the truth, but which would lead awrong, should be kept from their senses; now here is the province of the law of evidence; to distinguish the one from the other; to permit the presentation of the one, to suppress and exclude the other. The law of evidence is that body of rules whereby the law effects this end, whereby the law determines what tends to lead aright and what to lead awrong. The rules of evidence are administered by the court, wherefore it is the province of the court to say what matters may tend to the truth, and what can tend only to falsity and error; now, if certain evidence has two tendencies, one to the right and one to the wrong, the jury shall say what tendency shall be attached to that evidence; if it may lead to the truth, it canont be excluded from the jury because of a possibility that it may lead awrong; but when certain alleged evidence has but one tendency, and that all toward error, and none toward truth, then the jury should not be suffered to be led by that.

An inference is a proposition drawn from another proposition; it may be natural to draw a certain inference from a given proposition, wherefore it would be unnatural to draw the opposite contradictory inference from that same proposition; and no proposition can, per se,

standing alone and sequestered, be capable of supporting or giving birth to two inferences which are opposing, one natural and one unnatural; one legitimate and the other illegitimate; to say that an hypothesis bears a natural inference is to exclude the possibility that that same identical hypothesis can also bear an opposite and unnatural inference; the natural inference must of its own weight be attached until some other fact is brought, extraneous to the original hypothesis, which tends to show why the natural inference should not attach.

Let me demonstrate this point by illustration; and divorce from the illustration the idea of legal presumptions, and contemplate it simply as a proposition of fact presented amongst laymen; let the hypothesis be that A is a man; the natural inference, and the only inference that can by possibility spring from the isolated hypothesis, is that A is sane; that he is insane is an unnatural inference, which means that it is not brought into the mind by the presence of the original hypothesis; before this unnatural inference can be attached to A's case there must be some fact additional to the original hypothesis, which tends against the natural inference; whether it does so tend is a question of law for the court; so that while the general rule that the drawing of inferences is for the jury, yet when the inference sought to be attached is an unnatural inference, it cannot be suffered to be attached, until there is brought some fact extraneous to the hypothesis which in the judgment of the court tends to prove that the inference unnatural to the hypothesis is made natural by matters extraneous to that hypothesis.

Now take the case at bar; there are some matters admitted and conceded with regard to the characteristics of the testatrix, which give her an individuality which cannot be separated from the case, in any aspect of the evidence; and in construing the evidence either by court or jury, this conceded individuality must be kept in mind. And this conceded individuality must be kept present in every hypothesis drawn from the evidence, whether the hypothesis includes all of the evidence, a part of it, or a still smaller part; no hypothesis can be evolved for the case at bar which does not per se present this conceded personality and individuality of Mrs. Bates; for as I have said, the court is now called upon to decide this case, not some other case.

For instance, there is an entire absence from the evidence of a statement or act either of commission or of omission on the part of the testatrix which savors of excentricity or which is out of the normal; wherefore every hypothesis must assume her as a person whose whole life discloses no act or deed which militates against the presence of any of the natural faculties of a human being; and taking up every conceivable hypothesis, one after the other, which can be predicated upon the evidence, and including this conceded personality of Mrs. Bates as part of each hypothesis, the natural inference is in every instance against undue influence and against incapacity; the inference of either undue influence or incapacity is unnatural to every conceivable hypothesis; for each hypothesis must accord to Mrs. Bates that personality which has been conclusively established for her, so that we come finally to this; whether there is anything either in or out of whatsoever hypothesis may be put which tends to show why an unnatural and illegitimate inference should be attached, this is a question of law for the court: and 1 now find that there is not. There is a fact one way or the other as to Mrs. Bates; she was capable or incapable, she was unduly influenced or she was not; the evidence brought displays a panorama of her life; testimony has been had from persons in all varying degrees of association and acquaintance with her. From those who were close in friendship and relationship, those who knew her thoroughly and well during most all of the years of her life, to those who, while without the pale of intimacy still knew her; and to those who had not even beheld her, as the experts; this diverse testimony has marshalled an array of descriptive facts, and strange indeed would it be, if in all this array, there was no matter or thing which by a forced deduction could present what I have termed an unnatural inference; such only are urged by contestants; but there is a mighty array of conceded facts, whose significance can not be doubtful, and by whose very presence the forced unnatural inferences are inexorably doomed to such insignificance, such valueless and impoderable proportions, as to be unrecognizable as evidential matter: those persons who knew her best, the very contestants, scout and ridicule the idea of incapacity or intelletual impairment; two witnesses who knew her not familiarly entertain opinions which have heretofore been shown to be inapplicable and as evidence forceless; one expert who never saw her, ventures to opine the presence of hysterical aphonia, yet nowhere in all the evidence is there a tangible fact, however slight, capable of suggesting undue influence or incapacity; for the court to say that there is here evidence which tends at all towards undue influence or incapacity is to abhor and flee from good sense and reason, and to embrace and cherish illusions and hallucinations.

The learned counsel for contestants urge that while taken separately items of proof may not tend to incapacity or undue influence, but that many matters which he suggests, when taken in combination, like the strands of a rope do have a tendency and force; this argument assumes

that the items which he combines have the quality of competency as proving matter; quality of resistance is inherent to some degree in every strand taken to make a rope but quality of compentency or tendency in a certain direction is not inherent in evidence, and to be assumed for evidence at the pleasure of counsel.

Let me analyze an item which he uses as one of the most forceful in his combination. It is, as he puts it, "Mrs. Bates agreed to pay for a nurse for Henry Bates, and she violated her promise and failed to perform her obligation." Is there evidence which tends to prove the inference, the conclusions which he draws? The evidence is that she said, "Hire a nurse and I will pay for her." There is no evidence that she ever knew a nurse was hired, no evidence that she ever knew that a nurse had to be paid; certain it is that she was not under any moral obligation to pay unless she knew hat a nurse had been hired; and is it a legitimate inference to say that a person has violated an obligation when at the same time you admit that he was under no obligation at all, which could be violated? I must and do say, as a matter of law, that the item of the nurse cannot tend to support the inference that she forgot, overlooked, or violated an obligation; and so with each item of the presented combination, each when analyzed as an item cannot in law be accorded the inferential susceptibility urged. If you take each item by itself the assigned inference is unnatural and fallacious· and I am not yet advised how truth may be deducted from a combination of fallacies; if you take all the items together in combination, then it is not possible in law that they alone can form a predicate for the decision of this case, for I have already shown that certain conceded facts as to Mrs. Bates must be present in every hypothesis submitted, or the court will be deciding some other case, and not this particular case.

The evidence for the contestants is of such nature that no two unbiased minds can reach different conclusions thereupon; the irresistible deduction is that there was neither want of testamentary capacity nor undue influence. And when such is the state of the evidence is there a "scintilla," even though a fragment out of the evidence when standing alone, could by a forced and unnatural construction be said to tend to prove the allegations made?

I conclude that there is not for the following considerations, which have been promulgated in the adjudications of the higher courts of our state.

First. In ordinary actions, when the evidence brought by the plaintiff howsoever weakly, tends to prove his right to recover, and stops there without tending to disprove it, there is a "scintilla," and the cause must go to the jury.

Second. When the evidence brought by the plaintiff both tends to prove and to disprove his right and is so balanced that different minds may reach different conclusions, here again is there a scintilla, and the jury must decide.

Third. When the evidence brought by the plaintiff so refutes and overwhelms a right to recover as that different minds cannot reach different conclusions, this class of cases the supreme court has extricated from the grasp of the scintilla rule, if indeed they ever were within it.

In this third and latter class of cases belongs the case at bar; so that at last, however we reason, the "scintilla" rule is not for application here, for want of the presence of the "scintilla" in the light of the significance which the supreme court has itself evolved for that technical term.

If it be urged that the will itself suggests an unnatural disposition of her estate, the answer is that the will alone, and isolated from all other facts can in this regard suggest nothing; the disposition of property is natural or unnatural, only according to how the testatrix was circumstanced with recipients whereon to bestow her bounty; the disposition of an entire estate to a daughter of the blood and to the exclusion of kin more distantly related, shall not be said to be unnatural; and this is not because of mere blood relationship, but because of those inclinations of the human heart which are born of affection and love; let there be a daughter of the blood whose demeanor has so been as to destroy affection in the parental breast, and here a disinheritance by will could not be said to be unnatural; so that the test is seen to be not so much that of blood, as that of affection. This much for the wills of those who in their lives were parents; and shall we say that the propensities of human nature are absent from all mankind but these? Is it not within the ken of man that the deep wells of affection can be stirred in other than parental breasts? And may we not here forget the formality of this present moment so long as to confess faith in the thirsts and longings of the childless human heart, and to avow that affection for a fosterling may blossom into the fullness of a mother's tenderness.

Such is the portrayal that has been unfolded here; and let it not yet be said that the impulses of maternal instinct are unnatural.

---

To the Jury:

Gentlemen of the Jury:

You have heard enough to now know that under the law there is no such evidence in this case as casts upon you the responsibility of adjudging upon the validity of the will, and it is my duty to say

to you that under the law this will must be sustained.

J. C. Healy and H. W. Baker for Contestants.

H. W. Peck and J. W. Warington for Proponents.