OPINION
{¶ 1} Appellant herein, Christopher Emerson (hereinafter "Emerson"), appeals the judgment of the Defiance County Court of Common Pleas, Juvenile Division, finding he had abandoned Kristina Cravens, a minor child, and terminating his parental rights.
 {¶ 2} The facts and procedural history of this case are lengthy and intricate. In 2000, Emerson was living with JoAnn Cravens (hereinafter "JoAnn") in Hicksville, Ohio. During the time of their cohabitation, JoAnn became pregnant. A few months into her pregnancy, however, JoAnn commanded Emerson to move out of the house. Shortly after Emerson moved out, Bobby Begley moved in with JoAnn. During this time Emerson knew that JoAnn was pregnant, but did not know whether he or Bobby Begley was the father. JoAnn subsequently gave birth to Kristina Cravens (hereinafter "Kristina") on April 6, 2001.
 {¶ 3} After Kristina's birth, JoAnn called Emerson, who was living in Kentucky, to tell him that Kristina had been born. Emerson came to visit Kristina in June 2001, when she was approximately two months old. JoAnn testified that Emerson was supposed to return to Ohio in July 2001, at which point she would move to Kentucky with him. Before Emerson was able to return to Ohio in July, he was arrested and convicted of burglary and was sentenced to six months in a Kentucky jail.
 {¶ 4} Meanwhile, in June 2001, the Defiance County Department of Job and Family Services (hereinafter "Family Services") received a complaint of "failure to thrive" in regard to Kristina. At that point, the agency began a case management plan. After working with JoAnn and Kristina for over a year, Family Services petitioned the court for temporary custody in August 2002, alleging Kristina was a neglected child. An initial hearing was set for September 10, 2002.
 {¶ 5} Notice of the initial hearing was sent to Emerson in Kentucky, which he received August 29, 2002. In response to the notice, Emerson sent a letter to Donald Smith, staff attorney for Family Services, requesting that the hearing be rescheduled as Emerson was unable to attend. In the letter, Emerson stated that the "well being of Kristina Cravens is of great concern and importance to me" and he requested that temporary custody be given to his parents, Tom and Connie Emerson.
 {¶ 6} At the initial hearing, the trial court denied Emerson's request for a continuance. In order to establish paternity, the trial court ordered all parties to submit to DNA testing. The trial court scheduled a shelter care hearing for October 2, 2002, and pre-trial conferences for October 30, 2002 and December 17, 2002. Emerson, however, failed to respond to the notices of these hearings or appear in court.
 {¶ 7} At the December 17, 2002 hearing, JoAnn admitted to the charge that Kristina was a neglected child as alleged in the complaint filed by Family Services. Consequently, temporary custody was granted to Family Services for a period of one year or until August 27, 2003.
 {¶ 8} On December 24, 2002, one week after the trial court's order granting temporary custody, Family Services held a semi-annual review, which Emerson attended. At the review, Emerson requested that DNA testing be done to establish paternity. Emerson's request was granted and on December 26, 2002, Emerson's DNA sample was collected by Family Services. The DNA test results were received on January 29, 2003 and Emerson was officially determined to be the father of Kristina. He received notice of the results on or around February 6, 2003.
 {¶ 9} In March 2003, after parentage was determined, Emerson moved back to Ohio and obtained temporary employment. He testified that in April he began calling Family Services to set up visitation. Emerson stated that no one was at the office when he called. He testified that he left multiple messages, but never received any return calls. Family Services testified that they attempted to reach Emerson, but had been given a wrong number.
 {¶ 10} In May 2003, the Defiance County Child Support Enforcement Agency, on behalf of Family Services, filed a motion to establish a child support order for Emerson. A hearing was held June 3, 2003, at which Emerson was present. At the hearing, the trial court ordered Emerson to pay current child support, back child support and to maintain health insurance for Kristina. Pursuant to the order of child support, Emerson began making support payments on June 19, 2003. Before Emerson made his first payment, however, Family Services filed a Motion for Permanent Custody of Kristina Cravens. The motion was filed approximately one week after the child support hearing, on June 12, 2003.
 {¶ 11} In July 2003, Emerson went to the offices of Family Services seeking to gain custody of Kristina, as well as set up visitation and be added to the family case plan. Family Services informed him that he would need to make a filing with the court. On July 29, 2003, Emerson appeared in the Defiance County Court of Common Pleas, Juvenile Division and counsel was appointed. On August 11, 2003, Emerson filed a Motion for Permanent Custody of Kristina and requested that the court direct Family Services to establish a visitation schedule and case plan to prepare him for custody of his daughter.
 {¶ 12} Family Services subsequently arranged a visit between Emerson and Kristina. On the day of the visit, however, Emerson had to undergo emergency surgery and was unable to keep his appointment. In total, Emerson was only able to attend two two-hour visits with Kristina prior to the permanent custody hearing, which was scheduled for September 11, 2003.
 {¶ 13} At the permanent custody hearing, evidence and testimony were submitted and the matter was continued to September 30, 2003. The trial court's judgment was announced on October 6, 2003 and journalized on October 21, 2003.
 {¶ 14} In its decision, the trial court found that Emerson "effectively abandoned JoAnn Cravens during her pregnancy with Kristina and not only willfully but very effectively abandoned Kristina the first two years of her life." The trial court found that once Emerson was notified of his paternity he continued to disregard his obligations to Kristina and failed to support, visit or communicate with Kristina when he was able to do so. The trial court, therefore, terminated Emerson's parental rights.
 {¶ 15} It is from this decision that Emerson appeals and asserts two assignments of error for our review. As the two assignments of error involve similar issues, we will consider them together.
 ASSIGNMENT OF ERROR NO. I The trial court committed prejudicial error in finding thatChris Emerson abandoned his daughter.
 ASSIGNMENT OF ERROR NO. II The court committed prejudicial error in terminating theparental rights of Chris Emerson.
 {¶ 16} It is a firmly established principle of law that a parent has a fundamental right to care for and have custody of his child. In re Shaeffer Children (1993), 85 Ohio App.3d 683; citing Santosky v. Kramer (1982), 455 U.S. 745, 753. The United States Supreme Court has stated, "[i]t is cardinal with us that the custody, care and nurture of the child reside first in the parents." Stanley v. Illinois (1972), 405 U.S. 645, 651; citingPrince v. Massachusetts (1944), 321 U.S. 158, 166. The Ohio Supreme Court has determined that a parent "must be afforded every procedural and substantive protection the law allows." Inre Hayes (1997), 79 Ohio St.3d 46, 48. A motion by the state to terminate parental rights "seeks not merely to infringe that fundamental liberty interest, but to end it." Santosky v.Kramer (1982), 455 U.S. 745, 759. Therefore, the termination of parental rights is an alternative of last resort. See In reWise (1994), 96 Ohio App.3d 619; In re Cunningham (1979),59 Ohio St.2d 100.
 {¶ 17} Parental rights may only be terminated where a court finds that permanent custody is appropriate under circumstances of a particular case and all due process safeguards have been followed. In re Palmer (1984), 12 Ohio St.3d 194, 196. As a trial court is in the best position to weigh witness credibility and to evaluate a child's needs, the standard for reviewing a trial court's grant of permanent custody is abuse of discretion.In re T.C (2000), 140 Ohio App.3d 409. Accordingly, a trial court's judgment will not be disturbed unless it is deemed to be unreasonable, arbitrary or capricious. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 18} A juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency if it finds clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C.2151.414(B)(1) and 2151.414(B)(2); In re William S. (1996),75 Ohio St.3d 95, 99. Clear and convincing evidence is that degree of proof which will create in the mind of the trier of fact a firm belief as to the facts sought to be established. In reAdoption of Holcomb (1985), 18 Ohio St.3d 361, 368.
 {¶ 19} The trial court herein found that Emerson abandoned Kristina from the time of JoAnn's pregnancy until July 2003 and stated he "effectively abandoned Joann Cravens during her pregnancy with Kristina and not only willfully but very effectively abandoned Kristina the first two years of her life."
 {¶ 20} Emerson, however, argues that the trial court did not apply the correct definition of "abandonment" to the facts of the case. Emerson argues that he could not "abandon" Kristina until his paternity was established, which did not occur until February 2003. Emerson claims that R.C. 3107.07 is applicable to the case sub judice and maintains that the statute requires a finding that the parent has failed to communicate or provide support for the child for a period of one year. Emerson claims that the trial court erred in finding he "abandoned" Kristina, as the one-year period had not expired at the time of the permanent custody hearing.
 {¶ 21} Despite Emerson's assertion that R.C. 3101.07, governs the case before us, we find that Title 21 of the Revised Code provides the definition of an "abandoned child" applicable to the permanent custody proceedings herein. R.C. 2151.011(C) states that "a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days * * *."
 {¶ 22} Emerson testified that he attempted to set up visitation with Kristina, but Family Services did not cooperate with him or respond to his requests. We recognize that if Emerson attempted to visit Kristina, but was prevented from doing so by Family Services, it would be difficult to conclude that his actions were the equivalent of abandonment. See In re Adoptionsof Groh (2003), 153 Ohio App.3d 414, 424. However, the trial court in the case sub judice, after hearing witness testimony, did not find that Family Services interfered with Emerson's attempts at visitation. Because the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony we must give deference to the trial court's findings of fact. Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 23} Based on this deference, we find that Emerson did not provide any evidence that would rebut the presumption of abandonment, as contained in R.C. 2151.011(C). There is no evidence in the record that Emerson ever called or attempted to communicate with Kristina in any way other than his attempts to schedule visits through Family Services. Even accepting Emerson's argument that his duties to Kristina did not begin until his parentage was established in February 2003, the record reveals that Emerson failed to visit or communicate with Kristina for the ninety day period prescribed in R.C. 2151.011(C). Emerson did not visit or contact Kristina until August 2003, approximately six months after he had been judicially determined to be Kristina's father. Accordingly, we do not find that the trial court erred in finding that Emerson abandoned Kristina.
 {¶ 24} Emerson's first assignment of error is, therefore, overruled.
 {¶ 25} The trial court's finding of abandonment satisfies the first prong of the permanent custody test. The second prong of the permanent custody test is a determination of whether the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D).
 {¶ 26} According to R.C. 2151.414(D), when determining whether a grant of permanent custody is in the child's best interest, the trial court shall consider all relevant factors, including but not limited to: 1) the interaction and interrelationship of the child with the parent, siblings, relatives, and foster caregivers, etc.; 2) the wishes of the child expressed by the child or the child's guardian ad litem; 3) the custodial history of the child; 4) the child's need for legally secure placement and whether that type of placement can be achieved without a grant of permanent custody, and 5) any factors in R.C. 2151.414 (E)(7)-(11) that apply. Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors. See In re Smith, 9th Dist. No. 20711, 2002-Ohio-34; see, also, In re Palladino, 11th Dist. No. 2002-G-2445, 2002-Ohio-5606, ¶ 24.
 {¶ 27} In the case sub judice, the state requested termination of Emerson's parental rights due to his abandonment of Kristina. The trial court found there were three places in the Ohio Revised Code in which abandonment of children is mentioned. The first, the trial court found, was R.C. 2919.21, which describes criminal non-support. The trial court stated, "it appears that that could apply." The second mention of abandonment is in the neglected child definition, found in R.C. 2151.03, which the trial court found was applicable. The trial court found that "abandonment is a willful or indifferent disregard of the duty owed by parent to a child." The third mention of abandonment is R.C. 2107.07, the consent to adoption statute. The trial court also found this to be applicable to the present facts. Specifically, the trial court found:
By having no contact with Kristina for a period in excess oftwo years from the date of her birth, and a period of time beforethat during the pregnancy of mother, during which time she wasneglected admittedly by the mother due to her condition, medicalconcerns, her mother's inability to care for her, Chris Emersonnot only willfully, but very effectively abandoned Kristina. Dueto that, I have no trouble in finding that the parental rights ofChristopher Emerson should be terminated.
* * *
Therefore, it's the finding of the court that the bestinterests of these children requires that they have a stable homewith proper care and Permanent situation, which they do not atthis point have. It is further the Judgment of the court * * *that the Parental Rights of Chris Emerson be terminated based onabandonment, pre-birth until July of 2003, and the total lack ofinterest or commitment that was demonstrated. There is no historyto demonstrate an ability to provide a stable home for thesechildren and the girls have developed a strong bond with eachother.
 {¶ 28} R.C. 2151.414 imposes exact and stringent requirements for issuance of a permanent custody order. In re McColloch
(Dec. 20, 2002), Greene App. No. 02CA39 and 02CA40. To satisfy the statute, the preferred practice is to set out discrete findings of fact, relating those findings to the evidence that was offered to support them and the statutory factors the court is required to consider. Id. A format of that kind has two benefits: it advises a parent of the particular causes that resulted in the loss of his or her child, and it tells an appellate court why the trial court made the findings it did. Id. That is especially important when an appellate court must decide whether the grant of permanent custody is supported by clear and convincing evidence.
 {¶ 29} After a review of the trial court's decision, we find no indication that all of the factors of R.C. 2151.414 were considered in determining the best interest of Kristina. In its pronouncement, the trial court makes no reference R.C. 2151.414. The only reference made to the statute is found in the judgment entry, which was prepared by the prosecutor. That entry states, "having considered all of the statutory factors in Ohio Revised Code Section 2151.414 (D) and the report of the Guardian Ad Litem, the Court finds that it is in the best interests of the children that they be placed in the permanent custody of the Agency." However, none of the factors are discussed in reference to Emerson, either on the record or in the judgment entry. Although the trial court made extensive findings regarding JoAnn, no such findings were made regarding Emerson.
 {¶ 30} We have previously held that the trial court is required by R.C. 2151.414 "to find, by clear and convincing evidence, that certain criteria have been met, and the court must state those findings on the record, such that it is clear to all parties that the decision is supported by the facts." In reBrown (1994), 98 Ohio App.3d 337, 343. Without the trial court's consideration of the enumerated factors of R.C. 2151.414, we cannot determine whether clear and convincing evidence exists to support the court's finding that permanent placement of Kristina with Family Services is in her best interest. Therefore, based on the record before us, we find that the trial court erred in terminating Emerson's parental rights.
 {¶ 31} Accordingly, Emerson's second assignment of error is sustained.
 {¶ 32} Having found error prejudicial to appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
Judgment reversed.
Shaw, P.J., and Bryant, J., concur.