OPINION
{¶ 1} This appeal is taken from a final judgment of the Ashtabula County Court of Common Pleas, Juvenile Division. Appellant, Bridgette Phillips, appeals from the juvenile court's judgment terminating her parental rights and granting permanent custody of her minor children, Mercedes Phillips, Patricia Phillips, and Marchell Phillips, to appellee, Ashtabula County Child Services Board ("ACCSB").
 {¶ 2} By way of background, Patricia Phillips ("Patricia") was born November 6, 2000; Marchell Phillips ("Marchell") was born February 19, 2002; and Mercedes Phillips ("Mercedes") was born January 11, 2003.[1]
Appellant and Johnathan Bowens are the biological parents of Marchell and Mercedes. Appellant is Patricia's biological mother; however, Patricia's biological father is unknown.
 {¶ 3} On January 13, 2003, ACCSB filed a verified complaint with the Ashtabula County Court of Common Pleas, Juvenile Division. The verified complaint requested that the juvenile court inquire into appellant's alleged neglect and abuse of Mercedes. The allegations of neglect and abuse originated from appellant's admission that she was using cocaine during her pregnancy with Mercedes and that Mercedes tested positive for cocaine at her birth.
 {¶ 4} On February 3, 2003, the juvenile court issued a judgment entry adopting a magistrate's decision which determined Mercedes to be an abused child and placed Mercedes in the temporary custody of ACCSB. The decision noted that appellant had admitted to cocaine use during her pregnancy and that Mercedes had tested positive for cocaine. Accordingly, the court further ordered appellant to complete an intensive outpatient program ("IOP") for drug abuse rehabilitation.
 {¶ 5} On February 5, 2003, the ACCSB filed a verified complaint requesting that the juvenile court inquire into the alleged dependency of Patricia and Marchell. The complaint maintained that Patricia and Marchell were dependent children predicated upon appellant's drug use and appellant's abuse of Mercedes.
 {¶ 6} The court issued a March 6, 2003 judgment entry which adopted a magistrate's decision and found Patricia and Marchell to be dependent children. The court ordered that Patricia and Marchell were to remain in appellant's temporary custody, under the protective supervision of ACCSB.
 {¶ 7} Case plans that set forth the requirements for appellant's reunification with her children were filed with the juvenile court. In a June 19, 2003 semiannual review, the ACCSB recommended that appellant be granted temporary custody of Mercedes, under its protective supervision, based upon appellant's consistent compliance with the case plans. As a result, the juvenile court issued a judgment entry granting appellant temporary custody of Mercedes, under the protective supervision of ACCSB.
 {¶ 8} On September 2, 2003, ACCBS filed a motion to appear and show cause requesting that appellant be held in contempt for failing to comply with the court ordered case plan. Attached to the motion was the affidavit of an ACCSB caseworker. The caseworker's affidavit attested that appellant had failed to comply with random drug screens, failed to comply with her designated work assignments, and failed to comply with the children's required protective day care. The affidavit further declared that appellant was unable to financially meet the basic needs of her children and that appellant had failed to address her mental health issues.
 {¶ 9} The juvenile court issued an ex parte emergency order placing the children in the temporary custody of ACCSB. Shortly thereafter, ACCSB filed a verified complaint requesting that the court inquire into the alleged dependency of the three children and grant it temporary custody of the children.
 {¶ 10} Following a hearing, a magistrate's decision was issued on September 17, 2003. The magistrate's decision found that ACCSB's temporary custody of the children was necessary and in the best interest of the children. Specifically, the decision noted that appellant and Johnathan Bowens were incarcerated at the time of the hearing, and that appellant had immediately began abusing drugs after she was granted temporary custody of all three children.
 {¶ 11} On October 15, 2003, the juvenile court adopted the magistrate's decision finding the children to be dependent. Another case plan was filed with the juvenile court. The case plan required appellant to meet the following objectives: (1) meet the daily physical, educational, medical, and emotional needs of the children; (2) obtain a drug and alcohol assessment and complete any recommended treatment; (3) complete random drug and alcohol testing; (4) obtain a psychological assessment and follow any recommendations resulting from the assessment; (5) attend individual counseling and follow any recommendations resulting from the counseling; (6) maintain stable housing and attend budgeting classes; and (7) obtain stable employment.
 {¶ 12} On April 20, 2004, ACCSB filed a motion for permanent custody of the three children. Subsequently, the children's appointed guardian ad litem filed a report recommending that ACCSB be granted permanent custody of Mercedes, Marchell, and Patricia. The report noted that, since the children's second removal, appellant's compliance with the case plan had been less than minimal. Moreover, the report found that appellant had abandoned her children as she had failed to have any contact with ACCSB or her children since November of 2003. Likewise, ACCSB's final semiannual review showed appellant's complete lack of compliance with the case plan and her abandonment of the children.
 {¶ 13} This matter proceeded to a magistrate hearing held on August 17 and 18, 2004. The testimony at the hearing revealed that appellant, at the time the motion for permanent custody was filed, had completely failed to address her substance abuse problems. Although IOP had originally been recommended, appellant's failure to attend IOP, and her repeated relapses, required a higher level of treatment; namely, residential drug treatment. Despite multiple contacts by ACCSB informing appellant of available residential drug treatment programs, she failed to attend such programs.
 {¶ 14} Nevertheless, appellant testified that after the ACCSB filed the motion for permanent custody she enrolled in a residential drug treatment program and was scheduled to complete the program on September 9, 2003. A counselor with the drug treatment program verified appellant's enrollment.
 {¶ 15} Further testimony disclosed that appellant was unable to obtain employment or maintain stable housing. Appellant's cousin testified that appellant could possibly live with her, but was unable to make a commitment to such a living arrangement. In short, appellant was unable to demonstrate that she could provide her children with a home once the residential drug treatment program ended. Appellant was also unemployed.
 {¶ 16} The assigned caseworker for ACCSB testified that while appellant had completed a psychological evaluation, she had completely failed to comply with the recommendations of the evaluation. In addition, the caseworker noted that appellant's last contact with ACCSB or her children was November 20, 2003. Appellant stated that she had no contact with her children since November 20, 2003 because, at that point, she had begun to use drugs again.
 {¶ 17} Testimony further revealed that appellant had failed to comply with the case plan's requirement of random drug screening. Appellant testified that she had been sober since May 26, 2004. However, appellant failed to corroborate this testimony with proof of sobriety.
 {¶ 18} Following the hearing, the magistrate issued a decision finding the children to be abandoned and finding ACCSB's permanent custody would be in the best interest of the children. The magistrate determined that appellant had "failed continuously and repeatedly to substantially remedy the conditions causing the [children] to be placed outside the [children's] home." Therefore, the magistrate concluded that the children "cannot and/or should not be placed with either parent at this time or in the foreseeable future."
 {¶ 19} Appellant filed timely objections to the magistrate's decision. The court issued a judgment entry overruling appellant's objections and adopting the magistrate's decision, thereby granting ACCSB permanent custody of the three children.
 {¶ 20} From this judgment, appellant filed a timely notice of appeal and now sets forth the following assignment of error:
 {¶ 21} "The court erred in finding that permanent custody of the subject children to children services was in the children's best interests."
 {¶ 22} At the outset, we note it is well established that a parent's right to raise a child is an essential and basic civil right. In reHayes (1997), 79 Ohio St.3d 46, 48. The permanent termination of parental rights has been described as the family law equivalent of the death penalty in a criminal case. In re Hoffman, 97 Ohio St.3d 92, 2002-Ohio-5368, at ¶ 14. See, also, In re Smith (1991), 77 Ohio App.3d 1, 16. Based upon these principles, the Ohio Supreme Court has determined that a parent "must be afforded every procedural and substantive protection the law allows." (Citation omitted.) Hayes at 49.
 {¶ 23} That being said, R.C. 2151.414 sets forth the guidelines that a juvenile court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates that the juvenile court must schedule a hearing, and provide notice, upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.
 {¶ 24} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned and the parents cannot be located; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 25} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis that the juvenile court must apply when ruling on a motion for permanent custody. In practice, the juvenile court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.
 {¶ 26} If the child is not abandoned or orphaned, then the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the juvenile court must consider all relevant evidence before making this determination. The juvenile court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the conditions enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.
 {¶ 27} Assuming the juvenile court ascertains that one of the four circumstances listed in R.C. 2151.414(B)(1)(a) through (d) is present, then the court proceeds to an analysis of the child's best interest. In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates that the juvenile court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody
 {¶ 28} The juvenile court may terminate the rights of a natural parent and grant permanent custody of the child to the moving party only if it determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency that filed the motion, and that one of the four circumstances delineated in R.C.2151.414(B)(1)(a) through (d) is present. Clear and convincing evidence is more than a mere preponderance of the evidence; it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In re Holcomb
(1985), 18 Ohio St.3d 361, 368.
 {¶ 29} In the context of terminating parental rights, our standard of review on appeal is whether the juvenile court abused its discretion. Inre Snow, 11th Dist. No. 2003-P-0080, 2004-Ohio-1519, at ¶ 28. An abuse of discretion connotes more than an error of law or judgment, it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 30} Appellant first argues that the juvenile court's determination that the children could not be placed with her within a reasonable time was improper. Specifically, appellant argues that this finding was suspect as only Mercedes had been in ACCSB's custody for twelve or more months of a consecutive twenty-two month period. We disagree.
 {¶ 31} The court's judgment entry establishes a dual finding that appellant had abandoned her children and that the children could not be placed in appellant's custody within a reasonable time. Thus, the court was not required to establish that the children were in ACCSB's custody for twelve or more months of a consecutive twenty-two month period.
 {¶ 32} R.C. 2151.011(C) states that "a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days[.]" See, also, In reCravens, 3rd Dist. No. 4-03-48, 2004-Ohio-2356, at ¶ 21. Here, upon appellant's own admission at the hearing, the last contact or visit she had with the children was November 20, 2003. This represents approximately a nine-month period during which appellant had no contact or visitation with the children — well beyond the statutory ninety-day period. Moreover, there is no evidence that would rebut the presumption that appellant abandoned her children. Thus, the trial court properly found that the children had been abandoned.
 {¶ 33} Also, R.C. 2151.414(E)(4) states a court shall find that a child cannot be placed with either parent within a reasonable time if "[t]he parent has demonstrated a lack of commitment towards the child by failing to regularly support, visit, or communicate with the child when able to do so[.]" As stated previously, the evidence affirmatively establishes that appellant had demonstrated a lack of commitment to her children as she had failed to communicate or visit with the children for approximately nine months. Accordingly, the trial court accurately found that the children could not be placed with appellant in a reasonable amount of time.
 {¶ 34} Patricia and Marchell had not been in the custody of ACCSB for twelve months out of a consecutive twenty-two month period. But the first prong has been satisfied based upon the court's proper conclusions that the children were abandoned and the children could not be placed with appellant in a reasonable time. The fact that Patricia and Marchell were not in the custody of ACCSB for twelve months out of a twenty-two month consecutive period is irrelevant. This portion of appellant's assignment of error is not well-taken.
 {¶ 35} Appellant further maintains that her failure to contact or visit with the children was due to her relapse with drug abuse. Apparently, she concludes that her failure to visit or contact the children did not establish abandonment, as the failure to visit or contact was a byproduct of her drug abuse, rather than an intent to abandon.
 {¶ 36} Appellant's substance abuse does not establish evidence contradicting the juvenile court's finding of abandonment. To the contrary, evidence of her substance abuse merely demonstrates the reason
appellant abandoned her children. In short, appellant's substance abuse caused her to abandon her children and she cannot now rely upon her substance abuse as a justification for the children's abandonment. This portion of appellant's assignment of error is also not well-taken.
 {¶ 37} Finally, appellant argues that the court's determination that she had failed to substantially comply with the case plan was improper. Appellant contends that her voluntary enrollment in the residential treatment program demonstrates her concern for her children's welfare and her compliance with the case plan.
 {¶ 38} First, the voluntariness of appellant's enrollment in the residential program is questionable. Appellant's testimony conceded that her enrollment in the program was due to the court order to attend drug abuse rehabilitation. Regardless of whether her participation in the program was voluntary, the court's finding that appellant had failed to substantially remedy the conditions which resulted in the children's removal was required to be supported by clear and convincing evidence.
 {¶ 39} While non-compliance with the case plan is not enough to terminate appellant's parental rights, her repeated failures to remedy the circumstances which resulted in the children's removal is enough. See, e.g., In re Bailey (July 20, 2001), 11th Dist. No. 2001-G-2340, 2001 Ohio App. LEXIS 3293. R.C. 2151.414(E) places responsibility on the parent to remedy the situation that caused the children to be placed outside the home. According to R.C. 2151.414(E)(1), a juvenile court is required to find that the child cannot and should not be placed with either parent if it finds: "* * * the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."
 {¶ 40} In this case, the record demonstrates nearly a complete failure on the part of appellant to comply with the case plan and remedy the circumstances that resulted in the children being placed in the temporary custody of ACCSB. First, evidence established that appellant failed to address her various mental health issues via psychological counseling.
 {¶ 41} Appellant also failed to obtain housing or stable employment. This court has previously held that a parent's failure to obtain housing or stable employment, standing alone, establishes clear and convincing evidence that the parent did not substantially comply with the case plan and remedy the circumstances that resulted in their child's removal. See, e.g., In re Cather, 11th dist. Nos. 2002-P-0014, 2002-P0-015, and 2002-P-0016, 2002-Ohio-4519, at ¶ 45. Here, appellant conceded that she had no where to live once the residential treatment program ended on September 9, 2003. Appellant's cousin was unable to promise that appellant and the children could stay at her home. Appellant also testified that she was unemployed and unable to find work and, at the time of the hearing, would be unable to provide the basic necessities for her children.
 {¶ 42} Finally, with respect to appellant's drug abuse, clearly appellant has taken an important initial step by enrolling in the residential program. However, her failure to contact or communicate with ACCSB hinders an evaluation of her progress. The last contact appellant had with ACCSB occurred in November 2003. Importantly, she has failed to take a random drug test as provided in the case plan. A counselor from the residential program testified that patients are not subjected to drug testing. Moreover, appellant has established a history of relapse once the children are placed in her custody. Although appellant has taken an important step toward recovery, there is simply no indication that appellant has remedied her substance abuse problem.
 {¶ 43} An ACCSB caseworker's testimony summarized appellant's progress as follows:
 {¶ 44} "* * * [Appellant] still has a lot of issues to deal with in regard to her chemical dependency. There's no length of time of any stability in regards to being drug free, being sober, her mental health is another that's just starting to be addressed. She said she had an appointment next week. Housing, she doesn't have housing. She doesn't have a job. She's just beginning to take the steps in order to become sober and two months is not in my opinion a long enough period of time."
 {¶ 45} The record has established clear and convincing evidence that appellant has failed to substantially remedy the circumstances that resulted in the removal of her children. Thus, this portion of appellant's assignment of error is not well-taken.
 {¶ 46} Based upon the foregoing analysis, appellant's sole assignment of error is without merit. We hereby affirm the judgment of the trial court.
Ford, P.J., Rice, J., concur.
[1] Throughout the record Mercedes's name has also been spelled Mercades. In our opinion we will spell her name as Mercedes.