OPINION
{¶ 1} P.P. ("mother"), appellant, appeals from the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, in which the court granted the motion of Franklin County Children Services ("FCCS"), appellee, for permanent court commitment ("PCC").
 {¶ 2} D.P. ("child") is the daughter of mother and an unidentified father, and was born on March 30, 2005. On April 1, 2005, a complaint was filed alleging child to be neglected and dependent. An emergency custody order was granted to FCCS on the same date. In the complaint, FCCS alleged that mother tested positive for marijuana and cocaine on several occasions shortly before the birth of child. The complaint also alleged that mother was homeless, lacked the proper provisions for the care of child, and had a history of solicitation. On May 18, 2005, child was found to be neglected, and temporary custody of child was granted to FCCS. A case plan was also adopted on May 18, 2005. On December 19, 2005, FCCS filed a motion for PCC alleging mother had abandoned child under R.C. 2151.414(B)(1)(b), child could not be placed with mother within a reasonable time under R.C. 2151.414(B)(1)(a), and permanent custody was in the best interest of child.
 {¶ 3} A trial on FCCS's motion for PCC was held on May 24, 2006, at which time mother was incarcerated, and on June 28, 2006, the trial court granted the motion. Mother asserts the following assignment of error:
 THE TRIAL COURT'S DECISION TERMINATING THE APPELLANT'S PARENTAL RIGHTS WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.
 {¶ 4} Mother argues in her assignment of error that the trial court erred in granting the motion for PCC. A trial court's determination in a PCC case will not be reversed on appeal unless it is against the manifest weight of the evidence. In re Andy-Jones, Franklin App. No. 03AP-1167, 2004-Ohio-3312. Judgments supported by some competent, credible evidence going to all essential elements of the case are not against the manifest weight of the evidence. C.E. Morris Co. v. FoleyConstruction Co. (1978), 54 Ohio St.2d 279, paragraph one of the syllabus. We therefore must weigh the evidence in order to determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial *Page 3 
ordered. State v. Thompkins (1997), 78 Ohio St.3d 380, 387, citingState v. Martin (1983), 20 Ohio App.3d 172, 175. Reversing a judgment on manifest weight grounds should only be done in exceptional circumstances, when the evidence weighs heavily against the judgment. Id., at 387, citing Martin.
 {¶ 5} To terminate parental rights, the movant must prove, by clear and convincing evidence, one of the four factors enumerated in R.C. 2151.414(B)(1) and that the child's best interests are served by a grant of permanent custody to FCCS. In reM.B., Franklin App. No. 04AP-755, 2005-Ohio-986. Clear and convincing evidence is that degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the facts to be established. Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. It is more than a mere preponderance of the evidence but does not require proof beyond a reasonable doubt. Id.
 {¶ 6} FCCS moved for PCC based upon R.C. 2151.414(B)(1)(a) and (b), which provide:
 (B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 (b) The child is abandoned. *Page 4 
Although R.C. 2151.414(B)(1) requires the existence of only one of the circumstances in R.C. 2151.414(B)(1), it appears the trial court found both R.C. 2151.414(B)(1)(a) and (b) could apply alternatively.
 {¶ 7} With regard to R.C. 2151.414(B)(1)(b), the trial court did not discuss the issue of abandonment at great length, although it did clearly make a finding that mother had abandoned child. For purposes of R.C. 2151.414(B)(1)(b), "abandoned" is defined by R.C. 2151.011(C), which provides that "a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." Here, mother had no contact with her daughter from April 1, 2005, which was immediately after child's birth, to November 4, 2005, her first visitation with child. Mother first asserts that she had no intent to abandon child. To demonstrate this lack of intent, mother points to her reconnection with child and her subsequent visitations in November 2005. However, R.C. 2151.011(C) clearly indicates that it is immaterial whether the parent resumes contact with the child after the period of abandonment. See, e.g., In re Cravens, Defiance App. No. 4-03-48,2004-Ohio-2356, at ¶ 23 (no rebuttal of presumption of abandonment when father visited daughter after period of abandonment). In addition, R.C.2151.011(C) does not contain a requirement of any particular "intent" on behalf of the parent; rather, the provision defines "abandonment" solely in terms of the time between contacts. Thus, mother's contention, in this respect, is unavailing.
 {¶ 8} Mother further claims that R.C. 2151.011(C) only created a presumption of abandonment, and that she rebutted this presumption. Mother admitted she did not visit *Page 5 
her daughter during this period but claimed it took her this long because she wanted to know she could be clean and sober and be able to meet the case plan requirements. Mother asserted she was working toward reunification during this period. It is true that some courts have held that R.C. 2151.011(C) merely creates a presumption of abandonment, which a parent may rebut. See, e.g., In re Cornell, Portage App. No. 2003-P-0054, 2003-Ohio-5007, fn. 2. However, a review of the transcript in the case sub judice provides unconvincing evidence to support a rebuttal of the R.C. 2151.011(C) abandonment presumption. It is incongruent for mother to claim she was working toward reunification from April to November 2005, and yet fail to have even a single contact with child. Even if mother's claim were true, the goals in the case plan neither suggest the pursuance of the case plan objectives at the cost of contact with child nor promote such a result. Also, as FCCS points out, for a child who is 15 months old, this period of abandonment constitutes nearly half of the child's life.
 {¶ 9} In addition, the circumstances surrounding the abandonment in the present case are unlike those in In re Custody of C.E., Champaign App. No. 2005-CA-11, 2005-Ohio-5913, relied upon by mother herein, in which the evidence indicated that the mother avoided contact with children for four months in order to avoid a substantial possibility that her location could have been communicated to her husband, who had physically abused her. Also, mother's claim here that she was working on her sobriety is insufficient justification for maintaining no contact with her child. See, e.g., In re B.C.M., Lorain App. No. 05CA0001,2005-Ohio-1818, at ¶ 8 (mother's claim that her failure to visit child was because she was still using cocaine was insufficient to rebut a presumption of abandonment). Further, even though mother contacted Leora Whalen, a caseworker for *Page 6 
FCCS, in May 2005 to set up visitation, such was insufficient to rebut the abandonment presumption. See, e.g., In re L.D., Clinton App. No. CA2004-03-007, 2004-Ohio-4000, at ¶ 21 (that the father stopped by the children services agency once during the period of abandonment and called by telephone three times did not rebut presumption of abandonment); In re Cravens, supra, at ¶ 23 (the father's attempts to schedule visits through children services were not sufficient to rebut presumption of abandonment during period of no contact); In re KatrinaT., Sandusky App. No. S-03-024, 2004-Ohio-3164, at ¶ 16 (that mother called the caseworker and left messages that she wanted to visit her daughters was insufficient to rebut abandonment presumption when mother failed to leave phone number or appear for scheduled visitations). Therefore, we find there was clear and convincing evidence to support the trial court's finding that mother had abandoned child for purposes of R.C. 2151.414(B)(1)(b).
 {¶ 10} As mentioned above, the trial court also found that child could not be placed with either parent within a reasonable period or should not be placed with the parents pursuant to R.C. 2151.414(B)(1)(a). A trial court need only make one of the findings under R.C.2151.414(B)(1). In re Stafford, Stark App. No. 2006 CA 00307,2007-Ohio-928, at ¶ 20; see, also, R.C. 2151.414(B)(1). Nevertheless, although we need not address the applicability of R.C.2151.414(B)(1)(a), given the finding of abandonment, we find child was not in the temporary custody of FCCS for 12 or more months of a consecutive 22-month period and could not be placed with either parent within a reasonable time or should not be placed with the parents.
 {¶ 11} To support such finding, we concur with the trial court's determination that the circumstances met the factor in R.C.2151.414(E)(1). Consistent with R.C. *Page 7 2151.414(E)(1), mother failed continuously and repeatedly to remedy the conditions of her drug abuse, homelessness, and unemployment, which are detailed in our discussion of best interests, infra. A review of the testimony and the report of the guardian ad litem ("GAL") reveals that, despite FCCS's reasonable case planning and diligent efforts to assist mother, mother failed to utilize the medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to her by FCCS. Although mother completed several urine screens, as required by the case plan, Whalen testified that mother completed only seven of 21 required screens, and the GAL indicated that the screens completed by mother were positive for the presence of marijuana. Also, although mother completed a mental health evaluation and chemical abuse assessment, she failed to follow through on treatment for either. Whalen testified that she discovered the chemical abuse assessment recommended in-patient treatment for mother, but mother failed to complete such. Whalen also testified that she referred mother to several providers to aid her in obtaining housing, but mother never obtained independent housing. Further, although the case plan called for 14 to 16 visits after visitations commenced in November 2005, mother attended only seven full visits. Thus, after reviewing the record and testimony, we find mother failed continuously and repeatedly to substantially remedy the conditions causing child to be placed outside the home. We note that, although the trial court also found that several other factors in R.C. 2151.414(E) were met, only one is necessary to demonstrate a child cannot be placed with the parent within a reasonable period of time or should not be placed with the parent. Therefore, there was clear and convincing evidence to demonstrate child could not be placed with either parent within a reasonable period of time or should not be placed with *Page 8 
the parents, pursuant to R.C. 2151.414(B)(1)(a). For these reasons, the trial court's determination that there existed at least one of the four factors enumerated in R.C. 2151.414(B)(1) was not against the manifest weight of the evidence.
 {¶ 12} Pursuant to R.C. 2151.414(B)(1), we must next determine whether permanent custody was in the best interest of the child. R.C.2151.414(D) provides that, in determining the best interest of the child, the court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers, out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's GAL, with due regard for the maturity of the child; (3) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child. The factors set forth in R.C.2151.414(E)(7) through (11) include: (1) whether the parents have been convicted of or pled guilty to various crimes; (2) whether medical treatment or food has been withheld from the child; (3) whether the parent has placed the child at a substantial risk of harm due to alcohol or drug abuse; (4) whether the parent has abandoned the child; and (5) whether the parent has had parental rights terminated with respect to a sibling of the child. *Page 9 
 {¶ 13} In the present case, the trial court's decision indicates it considered the necessary best interest factors. See In re C.C., Franklin App. No. 04AP-883, 2005-Ohio-5163, at ¶ 53 (must be apparent the trial court considered the best interest factors). Our own review of the record supports the trial court's findings that it was in the best interest of the child to grant PCC to FCCS. With respect to R.C.2151.414(D)(1), mother testified child is happy to see her at visits, and she takes her blankets and toys. Whalen testified that she saw mother demonstrate skills during visitation that she might have learned in parenting classes. She felt mother was appropriate during the visits. However, Whalen stated that child is more comfortable with the foster family than with mother, and that there was no major reaction when child saw mother. Whalen testified child never cried when the visits were over, and there was "not much" evidence of bonding with mother. She stated there was bonding between child and the foster parents. The GAL indicated in his report that mother had minimal bonding with child, and child was well bonded with the foster parents. The GAL further indicated the foster parents are well informed on the special needs of child and are capable of handling such special needs. Mother testified that she had never been to any of child's medical appointments, and mother did not seem to have a clear grasp of child's health issues and her current state of health.
 {¶ 14} With regard to R.C. 2151.414(D)(2), child was too young to express her wishes. As to R.C. 2151.414(D)(3), the custodial history of the child, child was removed from mother's custody at birth and has since lived with the same foster parents. The GAL indicated that the foster parents are willing to adopt child.
 {¶ 15} Mother admitted she did not visit or have any contact with her daughter for at least the first five months of her life, and her memory was unclear as to how long the *Page 10 
initial period of non-contact had actually been. Whalen testified that mother contacted her first about visitation on May 5, 2005. A meeting was set up to discuss visitation and the case plan, but mother did not appear. Mother appeared at FCCS's offices in October 2005, and visitation was scheduled. Visitation then began on November 4, 2005, and mother attended seven full visits.
 {¶ 16} The factor in R.C. 2151.414(D)(4) involves whether the child needs a legally secure permanent placement and whether this can be achieved without a grant of permanent custody to the agency. The present case centers on several issues: mother's lack of appropriate housing, her lack of contact with child, her lack of stable employment, and her drug and alcohol issues. Mother testified she was staying at a homeless shelter when child was born, and, prior to being jailed at the time of the PCC hearing, she had been living at a shelter, which was admittedly not appropriate for child. She stated she had been working on getting an apartment when she was jailed prior to the PCC hearing. Whalen testified that mother did not follow her recommendations from the assessment for obtaining housing and drug treatment. Mother also never provided Whalen any evidence of appropriate housing or stable income, and the GAL concurred that mother lacked stable housing and employment. Although mother testified that she had worked for a temporary employment agency cleaning, the testimony suggested the job was only for a few days per month. Whalen also indicated that mother had completed only seven of 21 drug screens, and the GAL indicated that all had tested positive for marijuana and that mother had a history of crack cocaine abuse.
 {¶ 17} Further, there was evidence presented that there were no other suitable options for child outside of PCC with FCCS. Whalen testified that mother never provided *Page 11 
her with any names of relatives who could be considered for placement. Although placement with mother's sister was briefly discussed, mother stated that her sister could not care for child because she had children of her own. Whalen stated mother had not completed her case plan, and the GAL indicated that mother had failed to complete nearly all case plan objectives. As for ultimate opinions regarding PCC, the GAL concluded that mother had demonstrated a lack of commitment to child and shown an unwillingness to provide an adequate permanent home for child. The GAL was in favor of granting the motion for PCC.
 {¶ 18} With regard to R.C. 2151.414(D)(5), mother testified she was in jail at the time of the PCC hearing for a probation violation based upon a solicitation charge. She has been in jail five times since mid-2004, for a total of approximately four months. Mother also has drug and alcohol use issues. Mother admitted she was under the influence of alcohol when she went to the hospital to give birth to child. She stated she never had any drug treatment. Mother also stated she still drinks with friends and will smoke marijuana if her friends are smoking. Her attitude toward her marijuana usage during her testimony at trial was that of nonchalant indifference and apathy. Further, as mentioned above, Whalen testified that mother completed only seven of 21 random drug screens, and the GAL indicated the screens were positive for drug use. After the drug screens, Whalen was concerned about the results, but mother refused to engage in any treatment. There was also evidence that mother had abandoned child without any contact for two substantial periods, from April 2005 to November 2005, and from February 2006 through May 2006, during which time she was in jail. *Page 12 
 {¶ 19} After a review of the above evidence, we agree with the trial court that it is in the best interest of the child that PCC be granted to FCCS. It is undisputed that mother lacks stable, independent housing, and her employment is unsteady and less than occasional. Inability to maintain stable housing and employment are grounds for parental termination. In re Bowers, Franklin App. No. 02AP-347, 2002-Ohio-5084, at ¶ 85 (despite the obvious needs of the children, parents failed to maintain adequate housing and employment and demonstrated a lack of commitment to the children). This need for suitable housing and stable employment were two key issues included in mother's case plan. Failure to complete significant aspects of a case plan, despite opportunities to do so, is grounds for terminating parental rights. See In reBrofford (1992), 83 Ohio App.3d 869 (non-compliance with a case plan is a ground for termination of parental rights); In re M.L.J., Franklin App. No. 04AP-152, 2004-Ohio-4358 (same). Mother's inability to obtain stable housing and employment, while undertaking voluntary actions to place herself in prison, fail to convince this court that mother has the necessary desire to achieve these important goals. Mother was given a reasonable period to demonstrate her willingness to complete case plan objectives, but she failed to do so. The total lack of contact with her daughter during the first months of her life, and her infrequent contacts since, show mother's indifference toward being reunited with her child. For these reasons, we find there was clear and convincing evidence that PCC was in the best interest of child. The trial court's decision to grant PCC to FCCS was not against the manifest weight of the evidence. Therefore, mother's assignment of error is overruled. *Page 13 
 {¶ 20} Accordingly, mother's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.
Judgment affirmed.
 SADLER, P.J., and FRENCH, J., concur. *Page 1