OPINION
{¶ 1} Appellants Steve and Brenda Harvey and David and Carmela Wiant appeal from a final judgment of the Juvenile Division of the Champaign County Court of Common Pleas overruling a magistrate's decision awarding them permanent custody of their grandchildren, and awarding custody, instead, to the children's mother. The grandparents contend that the trial court erred by disregarding the decision of the magistrate. Specifically, they contend that the trial court erred by failing to find that the mother had abandoned her children, in view of her having failed to visit or maintain contact with her children for a period exceeding ninety days.
 {¶ 2} We conclude that although the presumption of abandonment established by R.C. 2151.011(C) was triggered when the mother failed to visit or maintain contact with the children for a period exceeding ninety days, the trial court could reasonably find, on the evidence before it, that the mother successfully rebutted that presumption. She presented evidence that she did not, in fact, intend to relinquish permanently her custodial rights, but absented herself for a period of time in order to avoid a substantial possibility that her whereabouts might be communicated to a physically abusive estranged spouse. Although the statutory presumption may be used to reverse the burden of going forward with evidence on the issue, abandonment, as used in Chapter 2151, requires proof of intent to relinquish parental rights of custody permanently, not just temporarily. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} Angela Smith is the mother of C.E. and D.H. In 1999, C.E.'s maternal grandparents, Steven and Brenda Harvey, filed a complaint for temporary custody of C.E. pursuant to R.C. 2151.23(A)(2). At the same time, D.H.'s paternal grandparents, David and Carmela Wiant, filed a similar action seeking temporary custody of D.H. Without benefit of counsel, Smith agreed to place the children in the temporary custody of their respective grandparents. By entry dated February 11, 1999, the juvenile court granted the complaints for temporary custody. It appears that the principal reason for the transfer of custody was to enable the children to be covered by their grandparents' health insurance policies.
 {¶ 4} In August, 1999, Smith requested the appointment of counsel to represent her with regard to the custody action. Smith averred that she was seeking custody of her children and that she was able to provide both housing and insurance for the children. After counsel was appointed, a motion was filed wherein Smith sought to regain custody of her children. The grandparents filed responses opposing any change in custody. The matter was referred for mediation, following which a "Memorandum of Understanding" was filed. The Memorandum provided that Smith would share custody of D.H. with the Wiants. It further provided that the Harveys would maintain custody of C.E., and that they would "seek input" from Smith regarding "major decisions" affecting C.E. The Memorandum also provided that Smith would be given "liberal open companionship time" with both children.
 {¶ 5} In May, 2002, Smith again sought to regain custody of her children. Again, the grandparents opposed any change in custody. A hearing was held before a magistrate. The magistrate stated that it "appears that Smith has become more stable [and] she is employed as is her husband and she and her husband own their own home." However, the magistrate found that Smith was an unsuitable parent based upon a determination that she had abandoned the children. Thus, the magistrate decided to award legal custody of the children to their respective grandparents.
 {¶ 6} Smith filed objections to the magistrate's decision, arguing that the magistrate's finding of abandonment was incorrect. The trial court agreed, and found that the evidence did not establish abandonment. The trial court thus returned custody of the children to Smith. From this order, the grandparents appeal.
 II {¶ 7} The sole assignment of error raised by the grandparents is as follows:
 {¶ 8} "THE TRIAL COURT ERRED IN VACATING THE MAGISTRATE'S FINDINGS OF ABANDONMENT, UNSUITABILITY AND BEST INTERESTS IN DETERMINING CUSTODY."
 {¶ 9} The grandparents contend that the trial court should not have overruled the decision of the magistrate. In support, they argue that the evidence supports a finding of abandonment.
 {¶ 10} At the outset, we note it is well established that a parent's right to raise a child is an essential and basic civil right. In reHayes (1997), 79 Ohio St.3d 46, 48. However, a parent may lose custody of a child to a non-parent if a court finds the parent unsuitable. In rePerales (1977), 52 Ohio St. 2d 89, syllabus. A finding of unsuitability may be premised upon a determination that the parent abandoned the child. Id.
 {¶ 11} R.C. 2151.011(C) states that, for purposes of R.C. Chapter 2151, "a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days[.]" In this case, the magistrate determined that Smith had abandoned the children because she had no contact with them for a period in excess of ninety days.
 {¶ 12} However, R.C. 2151.011(C) merely creates a presumption of abandonment, which a parent may rebut. See In re Cornell, Portage App. No. 2003-P-0054, 2003-Ohio-5007, fn. 2; In re Phillips, Ashtabula App. No. 2005-A-0020, 2005-Ohio-3774, ¶ 32. While the statute does not provide a definition, "`[a]bandonment' of a child has been defined as any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child." Baker v. Rose (1970), 28 Ohio Misc. 200, 203, citing, In reMasters (1956), 165 Ohio St. 503, 505-506. In Masters, the Ohio Supreme Court adopted dictionary definitions of "abandon" that included the concept of relinquishment "with the intent of never again resuming or claiming one's rights or interests in." Id., at 505. In accord, see In reKronjaeger (1957), 166 Ohio St. 172, 176-177. That definition of "abandon" appears to remain in common usage today. The first definition of "abandon" in Webster's Third New International Dictionary (G. C. Merriam Company, Springfield, Massachusetts, 1969) is: "to cease to assert or exercise an interest, right, or title to esp. with the intent of never again resuming or reasserting it."
 {¶ 13} Because it is often difficult to prove intent, presumptions are often employed as an aid in establishing intent. For example, at common law, an actor is presumed to intend the reasonably foreseeable consequences of his act.
 {¶ 14} A presumption effectively reverses the burden of coming forward with evidence to support a proposition of fact, causing the fact to be deemed established unless sufficient proof is presented to rebut the presumption. Once the presumption is rebutted, however, the presumption disappears. Evans v. National Life Acc. Ins. Co. (1986),22 Ohio St.3d 87, first paragraph of syllabus. Whether sufficient proof has been presented to rebut, or "unseat," a legal presumption is an issue of law for the court. Beresford v. Stanley (1898), 6 Ohio N.P. 38, 9 Ohio Dec. 134, 1898 WL 763.
 {¶ 15} In the case before us, Smith presented evidence to rebut the presumption. The evidence indicates that Smith and her husband had been involved in an argument that resulted in domestic violence. Smith left Ohio in order to avoid contact with her husband, who subsequently pled guilty to the offense. The evidence indicates that Smith avoided contact with the children for a period of about four months solely because she wanted to avoid the possibility that her husband would be able to locate her.[1] There was conflicting evidence on the duration of this period of non-contact; the magistrate found that Smith had avoided contact for a nine-month period. The trial court resolved this conflict in Smith's favor, and the evidence in the record would support that resolution. The difference is not especially material, since either period of non-contact is sufficient to trigger the statutory presumption, and since there was no evidence to contradict Smith's testimony concerning her reason for not contacting the children. Indeed, Brenda Harvey testified that she did not think Smith intended to abandon the children.
 {¶ 16} During the hearing, both grandmothers admitted that Smith is not an unfit parent. The record is devoid of any evidence, apart from the statutory presumption resulting from the period of non-contact in excess of 90 days, to indicate that Smith ever intended to abandon her children or to indicate that she intended to permanently relinquish custody.
 {¶ 17} The trial court found that the magistrate had incorrectly determined that Smith had abandoned the children. It appears that the magistrate treated the presumption set forth in R.C. 2151.011(C) as conclusive and irrebuttable, rather than as rebuttable. Irrebuttable presumptions are much different, and much more powerful, than rebuttable presumptions. Irrebuttable presumptions are essentially propositions of law rather than of fact. Because the presumption set forth in R.C.2151.011(C) is in derogation of the natural rights of parents, we construe it narrowly as a rebuttable presumption, rather than expansively, as an irrebuttable presumption.
 {¶ 18} The trial court found that Smith had presented evidence sufficient to rebut the presumption and that no other evidence had been presented warranting the termination of her parental rights. Although the magistrate had necessarily advanced to the second step of the analysis required by R.C. 3109.04(F), and determined that it was in the best interests of each child to be placed in the custody of the grandparents, respectively, the trial court correctly noted that this issue became immaterial once it was determined that the mother had not abandoned the children and was not otherwise unsuitable. In re Hockstock,98 Ohio St.3d 238, 2002-Ohio-7208.
 {¶ 19} From our review of the record, we conclude that the trial court's decision is supported by the evidence and the law. Accordingly, the sole assignment of error is overruled.
 III {¶ 20} The sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
Donovan and Young, JJ., concur.
(Hon. Frederick N. Young, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio)
[1] We note that the record indicates that since that time, Smith and her husband have successfully completed parenting classes, have bought a home, and have secured jobs. The record further indicates that domestic violence is no longer an issue in this case.