[Cite as *In re B.J.*, 2012-Ohio-1913.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN RE: B.J.

JUDGES:
Hon. Patricia A. Delaney, P.J.
Hon. W. Scott Gwin, J.
Hon. John W. Wise, J.

Case No. 2011-CA-00277

O P I N I O N

CHARACTER OF PROCEEDING: Civil appeal from the Stark County Court of Common Pleas, Case No. 2010JCV0715

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: April 30, 2012

APPEARANCES:

For Father

GREGORY A. PRICE
137 South Main Street, Ste. 300
Akron, OH 44308

For SCJ&FS

LISA LOUY
Stark County Job & Family Services
221 3rd Street
Canton, OH 44702

*Gwin, J.*

{¶1} Appellant-father R.K.[1] appeals the September 11, 2011, judgment entry of the Stark County Court of Common Pleas, Family Court Division, which terminated his parental rights with respect to his minor child B.J. and granted permanent custody of the child to appellee, Stark County Job and Family Services (hereinafter "SCJFS").

## I. PROCEDURAL HISTORY

{¶2} On June 29, 2010, SCJFS filed a complaint seeking temporary custody of B.J., born May 22, 2009. The complaint alleged the child to be dependent and requested temporary custody. After a shelter care hearing the court ordered B.J. into the emergency temporary custody of the SCJFS.

{¶3} On June 29, 2010, R.K.'s complaint was returned marked "Not Served." On June 30, 2010 a complaint and praecipe was sent to R.K. by certified mail to an address in Sylvania, Ohio. On July 21, 2010, mother requested counsel and the case was set for evidence on September 2, 2010.

{¶4} On July 22, 2010, counsel was appointed for mother. Mother waived her rights and stipulated to a finding of dependency. The magistrate found by Judgment Entry filed July 22, 2010 "no service on father."

{¶5} On August 2, 2010, service attempted upon R.K. at an address in Sylvania, Ohio was returned "unserved." On August 18, 2010, attempted service upon R.K at an address in Holland, Ohio was returned unserved, marked "Attempted Not Known."

---

[1] For purposes of anonymity, initials designate father's name and the child's name. See, e.g., *In re C.C.,* Franklin App. No. 07-AP-993, 2008-Ohio-2803 at ¶ 1, n.1. Counsel should adhere to Sup.R.Rule 45(D) concerning disclosure of personal identifiers.

{¶6} On September 2, 2010, B.J. was found dependent as to mother's interests and placed into the temporary custody of the SCJFS.

{¶7} On September 15, 2010, service was completed upon R.K. R.K. failed to appear at the hearing scheduled for September 22, 2010. On September 22, 2010, the court took evidence with regard to R.K.'s interests. The magistrate found B.J. to be dependent as to R.K.'s interests and temporary custody was granted to the SCJFS.

{¶8} On February 16, 2011, SCJFS filed a Motion for Permanent Custody. Service was perfected on all parties. Trial was scheduled for April 12, 2011. On April 8, 2011, counsel was appointed for R.K. On April 12, 2011 R.K. appeared with counsel and requested a continuance. The trial court found R.K. had failed to appear for genetic testing at least three times; however, the court granted R.K.'s request for a continuance to allow genetic testing to be completed.

{¶9} On May 16, 2011, R.K. filed a motion for visitation and custody. By Judgment Entry filed May 20, 2011 the trial court found that paternity had been established. The trial court scheduled the next dispositional review hearing for November 17, 2011 and ordered the "Status Quo."

{¶10} On June 3, 2011, R.K. filed a motion requesting a six-month extension. On June 23, 2011, R.K. filed a "Motion to Recuse Visiting Judge." R.K. alleged that the visiting judge had denied his motion for a six-month extension and granted the SCJFS motion for permanent custody without a trial. The visiting judge reconsidered and rescheduled the matter. In the meantime, R.K. filed an affidavit of bias with the Ohio Supreme Court requesting that court disqualify the visiting judge. By Judgment Entry filed June 28, 2011 the administrative judge for the Stark County Court of Common

Pleas, Family Court Division denied R.K.'s motion to recuse noting that only the Ohio Supreme Court can determine such a motion. On June 28, 2011, counsel for R.K. filed an affidavit of disqualification with the Ohio Supreme Court.

{¶11} On August 29, 2011, R.K. filed a motion requesting a six-month extension.

{¶12} On August 30, 2011, this case was transferred to a new judge. On August 31, 2011, counsel appeared for the trial on the motion for permanent custody. Counsel for R.K. waived his affidavit of disqualification, which was still pending before the Ohio Supreme Court. Counsel stipulated that the appointment of a new judge obviated any concern he had about the previous judge hearing the permanent custody trial. (T. at 3-5).

## A. Permanent Custody Trial.

{¶13} R.K. testified to a rocky relationship with B.J.'s mother who would allow him to be a part of his son's life as long as she needed something from R.K. Nonetheless, R.K. was involved with the pregnancy and birth of his son. When mother allowed it, R.K.'s interaction with his son was very positive. R.K. brought his son to family events and R.K.'s family welcomed both warmly.

{¶14} In the spring or summer of 2010, mother departed Wood County with the couple's son. R.K. testified that he did not know mother left Wood County for Stark County and had no way of contacting mother. R.K. testified that he did not know where his son was until he was contacted by SCJFS in August or September 2010.

{¶15} R.K. testified that he was contacted by the Child Support Enforcement Agency ("CSEA") regarding paternity testing in December 2010. He repeatedly told both SCJFS and CSEA that he had no means of getting to Stark County to be tested. R.K.

claims that he requested that the paternity testing be moved to Wood County, but that request was refused. Instead, CSEA allegedly sent it to Toledo, which is forty minutes away with no public transportation connecting it to Bowling Green. R.K. testified that he contacted a cab company but could not afford the cost. R.K. testified that throughout this ordeal, he was requesting visits but he was led to believe that he had to establish paternity before he could get visits. R.K. admitted that no one from CSEA or SCJFS told him that he could not have visitation with his son.

{¶16} After R.K. was appointed counsel, it took less than five weeks to have the request sent to Bowling Green, R.K. tested and the results prepared. By the time paternity was established in May 2011, SCJFS had not made any visits to R.K.'s home and had not scheduled any visitation. Although R.K.'s case plan was amended, the caseworker never discussed the new case plan with R.K., or requested R.K. to sign it. To date the case plan is blank were R.K. should have signed.

{¶17} R.K. did not see his son until June 2011. By that time R.K. lived in Michigan with his fiancée and drove the three and a half-hour trip one way to see his son. R.K., at the time of the trial, was consistently visiting every two weeks. He and his fiancée drive the seven-hour trip in the middle of the week; SCJFS has not offered a weekend visit. The caseworker testified that R.C. is age-appropriate and gentle with B.J.

{¶18} Elizabeth Nolff, R.K.'s fiancée testified that she has been in a relationship with R.K. since November 2010. When they met, R.C. was residing in Bowling Green, Ohio and then moved to Clinton, Michigan to be with her. Nolff further testified that she has an appropriate home for B.J. and would be willing to help care for him. Nolff was

asked if she was able to provide transportation to R.K. during the period of June 2010 to June 2011. Nolff testified she would have been able to transport R.K.

**{¶19}** On September 7, 2011 the Court issued its decision that R.K. had "abandoned [B.J.] by virtue of failure to maintain contact with the child for a period in excess of ninety days (90)." Further, the Court found that the best interest of the child would be served by the granting permanent custody of the children to the SCJFS.

**{¶20}** Following the decision, the caseworker contacted R.K. to discuss a recent meeting the worker had with mother. Mother told the caseworker that R.K. was never violent with her and that she left without notice to R.K. as to how to contact her. She further told the worker that R.K. was in fact attempting to contact her but she had avoided him. The trial court overruled R.K.'s motion after hearing on November 21, 2011 finding that the matter was not new information bearing on the facts; rather it was simply bearing upon the credibility of the witnesses.

**{¶21}** It is from these entries that the R.K. has appealed.

## II. Assignments of Error

**{¶22}** On appeal, R.K. asserts the following assignments of error:

**{¶23}** "I. THE TRIAL COURT ERRED IN GRANTING THE STATE'S MOTION FOR PERMANENT CUSTODY AND DENYING FATHER'S MOTION FOR A SIX-MONTH EXTENSION AS THAT FINDING IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶24}** "II. THE TRIAL COURT ERRED IN DENYING FATHER'S REQUEST FOR RE-HEARING OF THE STATE'S MOTION FOR PERMANENT CUSTODY."

**A. Burden Of Proof**

**{¶25}** "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169(1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551(1972). A parent's interest in the care, custody and management of his or her child is "fundamental." Id.; *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599(1982). The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45(1991). Therefore, parents "must be afforded every procedural and substantive protection the law allows." Id.

**{¶26}** An award of permanent custody must be based upon clear and convincing evidence, R.C. 2151.414(B)(1). The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23(1986).

**B. Standard of Review**

**{¶27}** The Ohio Supreme Court has delineated our standard of review as follows,

> Where the degree of proof required to sustain an issue must be
> clear and convincing, a reviewing court will examine the record to

determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof. See *Ford v. Osborne*, 45 Ohio St. 1, 12 N.E. 526, *Cole v. McClure*, 88 Ohio St. 1, 102 N.E. 264, and *Frate v. Rimenik,* 115 Ohio St. 11, 152 N.E. 14.

*Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954). A court of appeals will affirm the trial court's findings "if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." *In re Adkins,* 5th Dist. Nos. 2005AP06–0044 and 2005AP07–0049, 2006-Ohio-431, 2006 WL 242557, ¶ 17.

**{¶28}** In *Cross*, the Supreme Court further cautioned,

The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false*. See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added).

### III. Requirements for Permanent Custody Awards

{¶29} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶30} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.;

(b) the child is abandoned;

(c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

{¶31} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**A. Parental Placement within a Reasonable Time- R.C. 2151.414(B) (1) (a).**

{¶32} The court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C. 2151.414(E). The statute also indicates that if the court makes a finding under R.C. 2151.414(E) (1) – (15), the court shall determine the children cannot or should not be placed with the parent. A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors. The existence of

one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. See *In re: William S.*, 75 Ohio St.3d 95, 1996-Ohio-182, 661 N.E.2d 738; *In re: Hurlow,* 4th Dist. No. 98 CA 6, 1998 WL 655414(Sept. 21, 1998); *In re: Butcher,* 4th Dist. No. 1470, 1991 WL 62145(Apr 10, 1991).

**{¶33}** R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Specifically, Section (E) provides, in pertinent part, as follows:

> (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously

and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

(3) The parent committed any abuse as described in section 2151.031 of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child

when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

(5) The parent is incarcerated for an offense committed against the child or a sibling of the child;

(6) The parent has been convicted of or pleaded guilty to an offense under division (A) or (C) of section 2919.22 or under section 2903.16, 2903.21, 2903.34, 2905.01, 2905.02, 2905.03, 2905.04, 2905.05 2907.07, 2907.08, 2907.09, 2907.12, 2907.21,2907.22, 2907.23, 2907.25 2907.31, 2907.32, 2907.321, 2907.322, 2907.323, 2911.01, 2911.02, 291 1.11, 2911.12,2919.12, 2919.24, 2919.25, 2923.12, 2923.13, 2923.161, 2 925.02, or 3716.11 of the Revised Code and the child or a sibling of the child was a victim of the offense or the parent has been convicted of or pleaded guilty to an offense under section 2903.04 of the Revised Code, a sibling of the child was the victim of the offense, and the parent who committed the offense poses an ongoing danger to the child or a sibling of the child.

(7) The parent has been convicted of or pleaded guilty to one of the following:

* * *

(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of

the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.

(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.

(10) The parent has abandoned the child.

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.

(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

(15) The parent has committed abuse as described in section 2151.031 of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.

(16) Any other factor the court considers relevant.

{¶34} R.C. 2151.414(D) requires the trial court to consider all relevant factors in determining whether the child's best interests would be served by granting the permanent custody motion. These factors include but are not limited to: (1) the interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions (E) (7) to (11) apply.

{¶35} In this case, the trial court made its permanent custody findings pursuant to R.C. 2151.414(B)(1)(b). The trial court found that the evidence established that [R. K.] has abandoned [B.J.] by virtue of failure to maintain contact with the child for a

period in excess of ninety days (90)." The record includes the recommendation of the guardian ad litem for the child, and the testimony of several witnesses, including R.K.

**{¶36}** R.C. 2151.011(C) provides,

> For the purposes of this chapter, a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days.

**{¶37}** R.C. 2151.011(C) merely creates a presumption of abandonment, which a parent may rebut. See *In re C.E.*, 2nd Dist. No. 2005-CA-11, 2005-Ohio-5913, ¶12; In *re Cornell,* 11th Dist. No.2003-P-0054, 2003-Ohio-5007, fn. 2; *In re Phillips,* 11th Dist. No 2005-A-0020, 2005-Ohio-3774, ¶32.

**{¶38}** A review of the record establishes that R.K. had a relationship with his son before the child's mother moved to Stark County. In this respect, failure to establish paternity is not truly an excuse for failing to establish contact or visitation. Even assuming the child's mother concealed her and B.J.'s whereabouts, R.K. was served with the complaint on September 15, 2010. At that point the mother no longer had control over visitation with R.K. R.K.'s fiancée testified that she could have transported R.K. to Stark County at any time between September, 2010 and June 2011. R.K. did not appear until April 13, 2011 at which time he requested another extension to establish paternity after failing to appear for the test on three prior occasions. He never supported his child and never visited his child or established any relationship with this child until after the entry establishing his paternity.

{¶39} We recognize that if R.K. attempted to visit B.J., but was prevented from doing so by SCJFS, it would be difficult to conclude that his actions were the equivalent of abandonment. See *In re Adoptions of Groh*, 153 Ohio App.3d 414, 424, 794 N.E.2d 695(2003). However, the trial court in the case sub judice, after hearing testimony, did not find that SCJFS interfered with R.K.s attempts at visitation. Because the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony, we must give deference to the trial court's findings of fact. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273(1984).

{¶40} Based upon the foregoing, as well as the entire record in this case, we find that R.K. did not provide sufficient evidence to rebut the presumption of abandonment, as contained in R.C. 2151.011(C). *In re Cornell* at ¶20; *In re Cravens*, 3rd Dist. No. 4-03-48, 2004-Ohio-2356, ¶23; *In re Bailey* Children, 5th Dist. No. 2004 CA 00386, 2005-Ohio-2981, ¶ 32.

### B. The Best Interest of the Child.

{¶41} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court consider all relevant factors, including, but not limited to, the following:

(1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;

(2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(3) the custodial history of the child; and

(4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

**{¶42}** The focus of the "best interest" determination is upon the child, not the parent, as R.C. 2151.414(C) specifically prohibits the court from considering the effect a grant of permanent custody would have upon the parents. *In re: Awkal,* 95 Ohio App.3d 309, 315, 642 N.E.2d 424(1994). A finding that it is in the best interest of a child to terminate the parental rights of one parent is not dependent upon the court making a similar finding with respect to the other parent. The trial court would necessarily make a separate determination concerning the best interest of the child with respect to the rights of the mother and the rights of the father.

**{¶43}** The trial court made findings of fact regarding the child's best interest. It is well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re: Mauzy Children,* 5th Dist No. 2000CA00244, 2000 WL 1700073(Nov. 13, 2000). *In re: Awkal, supra* at 316.

**{¶44}** In the case at bar, the trial court found that B.J. is currently placed in foster care and is well adjusted. He has been in the same foster home since his removal from mother. The foster family is committed to him and has expressed an interest in adopting him. B.J. is very comfortable in the home and is bonded to his foster parents and their

children. R.K. has had minimal interaction with B.J. in June 2011. The guardian ad litem recommended permanent custody of B.J. to the SCDJS as being in his best interest.

{¶45} Based on the evidence submitted at trial, the court properly determined the best interest of the child would be served by the grant of permanent custody to SCDJS.

## C. Post trial Motion

{¶46} Civ.R. 59 governs motions for a new trial:

(A) Grounds

A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:

 * * *

(6) When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses.

{¶47} The Ohio Supreme Court has observed,

"To warrant the granting of a motion for a new trial on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result of a new trial if granted; (2) has been discovered since the trial; (3) is such as could not in the exercise of due diligence have been discovered before the trial; (4) is material to the issues; (5) is not merely cumulative to former evidence; and (6) does not merely impeach or contradict the former evidence."

*State v. Petro*, 148 Ohio St. 505, 76 N.E.2d 370(1947), syllabus.

**{¶48}** "The granting of a motion for a new trial upon the ground named [newly discovered evidence] is necessarily committed to the wise discretion of the court, and a court of error cannot reverse unless there has been a gross abuse of that discretion. And whether that discretion has been abused must be disclosed from the entire record." *State v. Petro, supra,* 148 Ohio St. at 507 and 508, 76 N.E.2d 370, quoting *State v. Lopa*, 96 Ohio St. 410, 411, 117 N.E. 319(1917). An abuse of discretion is more than an error of law or judgment and implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140(1983). When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748(1993).

**{¶49}** In the case at bar, R.K. argues that mother admitted to the caseworker after trial that she intentionally mislead him into believing that R.K. had no contact with his son and that she ran from R.K. because he was violent. Mother further admitted that she fled with the child and never attempted to contact R.K. She made every effort

to make sure that R.K. could not contact his son. Therefore, R.K.'s absence was not voluntary.

**{¶50}** R.K. has the burden of establishing that the new evidence created a strong probability of a different result if a new trial was granted. *State v. Luckett*, 144 Ohio App.3d 648, 661, 761 N.E.2d 105(2001). The evidence proffered by R.K. in support of his motion is not material to the issues, is merely cumulative to former evidence, and, at best, merely impeaches or contradicts the former evidence. *State v. Petro, supra.*

**{¶51}** As previously noted, after R.K. was served in the case at bar, the actions of the mother cannot justify his delay in establishing paternity and his failure to visit or contact the child for the next eight months. Nothing in the proffered evidence established that R.K. was in any way prevented from contact with B.J. from September 2009 to June 2010. Thus, the new evidence does not create a strong probability of a different result if a new trial was granted.

**{¶52}** Accordingly, the trial court did not err in denying his motion for a new trial claiming newly discovered evidence or his motion for a new trial claiming misconduct of the mother and his request for a further hearing on the matter.

## III. Conclusion

**{¶53}** For these reasons, we find that the trial court had sufficient, credible evidence before it to find by clear and convincing evidence that R.K. had abandoned B.J. We further find that the trial court's decision that permanent custody to SCJFS was in B.J.'s best interest was not against the manifest weight or sufficiency of the evidence.

**{¶54}** We further find that the trial court did not err in denying his motion for a new trial claiming newly discovered evidence or misconduct of the mother and his request for a further hearing on the matter.

**{¶55}** R.K.'s two assignments of error are overruled in their entirety, and the judgment of the Stark County Court of Common Pleas, Family Court Division is affirmed.


By Gwin, J.,

Delaney, P.J., and

Wise, J., concur

_____
HON. W. SCOTT GWIN

_____
HON. PATRICIA A. DELANEY

_____
HON. JOHN W. WISE

WSG:clw 0412

[Cite as *In re B.J.*, 2012-Ohio-1913.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

IN RE: B.J.

:
:
:
:
:
:
:     JUDGMENT ENTRY
:
:
:
:     CASE NO. 2011-CA-00277

 

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Family Court Division is affirmed. Costs to appellant.

_____
HON. W. SCOTT GWIN

_____
HON. PATRICIA A. DELANEY

_____
HON. JOHN W. WISE