[Cite as *In re N.C.P.*, 2014-Ohio-3694.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                  |   |                              |
|------------------|---|------------------------------|
| IN RE: N.C.P.    | : | JUDGES:                      |
|                  | : | Hon. W. Scott Gwin, P.J.     |
|                  | : | Hon. Patricia A. Delaney, J. |
|                  | : | Hon. Craig R. Baldwin, J.    |
|                  | : |                              |
|                  | : |                              |
|                  | : | Case No. 2014CA00083         |
|                  | : |                              |
|                  | : |                              |
|                  | : | O P I N I O N                |


CHARACTER OF PROCEEDING:     Civil appeal from the Stark County Court of
                             Common Pleas, Family Court Division,
                             Case No. 2013JCV00315

JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      August 25, 2014

APPEARANCES:

For Plaintiff-Appellee          For Defendant-Appellant

JAMES PHILLIPS                  DAVID L. SMITH
SCDJFS                          245 33rd Street N.W.
221 Third Street S.E.           Canton, OH 44709
Canton, OH 44702

*Gwin, P.J.*

{¶1} Appellant-mother, Nichole Arntz ["Mother"] appeals the April 22, 2014, judgment entry of the Stark County Court of Common Pleas, Family Court Division, which terminated her parental rights with respect to her minor child N.C.P. and granted permanent custody of the child to appellee, Stark County Department of Jobs and Family Services ("SCJFS").

### *Facts and Procedural History*

{¶2} On April 1, 2013, SCJFS filed a complaint seeking temporary custody of N.C.P. (b. 03/30/2013) and alleging the child to be dependent and/or neglected. On June 5, 2013, the child was found to be dependent. The court further found that the agency had made reasonable efforts to prevent the need for removal of the child from the home and approved and adopted the case plan.

{¶3} During the course of the case, the trial court has conducted the required reviews every six months and has found that the SCJFS has made reasonable efforts to reunite the family.

{¶4} On February 30, 2014, SCJFS filed a motion for permanent custody of N.C.P. On April 22, 2014, a hearing on the motion for permanent custody was held at which the following evidence was presented.

{¶5} Mother was to complete a parenting assessment at Northeast Ohio Behavioral Health, follow through with a Quest drug and alcohol assessment and complete any recommended treatment, submit to random drug test, and secure stable housing and employment.

{¶6} Mother completed both the parenting and Quest assessments. The parenting assessment recommended that Mother successfully complete the Goodwill Parenting Program, complete drug treatment, attend two AA meetings a week, and secure stable housing and employment. Mother failed to complete those services. Mother failed to complete the Goodwill Parenting Program. Mother was terminated from Quest treatment for non-compliance. Mother failed to comply with random urine drug test and failed to obey a court order dated September 24, 2013 for a hair follicle drug test. The last drug test Mother submitted to the worker was positive for cocaine. Mother did not keep in contact with the caseworker. Mother did not have independent housing or employment on the day of trial.

{¶7} Mother has past legal history with SCJFS in cases 2010JCV00178 and 2011JCV00084. The concerns in those cases were the same as in the present case. Mother failed to complete the case plan requirements in both of those cases and she stipulated to the grant of permanent custody to SCJFS of those children. Mother admitted during her testimony on cross-examination that this was the third time she had a chance to work case plan services and had not successfully completed them.

{¶8} On the date of the permanent custody trial Mother was in custody at the Stark Regional Community Corrections Center ["SRCCC"]. Mother was at SRCCC after being convicted for failure to comply with a police officer and drug abuse. Mother was enrolled in courses at SRCCC designed to help with chemical dependency, criminal activity, and to find employment.

{¶9} Mother was not working her case plan or visiting the child before her incarceration. The caseworker testified that Mother had not visited with her child since

November of 2013. Mother contended that she was incarcerated for part of that time and unable to visit. The caseworker testified that Mother was released at one point while her case was pending and still did not visit with the child. Mother admitted to being released from jail on January 21, 2014 and not visiting with her child between that date and the permanent custody trial.

{¶10} The caseworker testified during the best interest hearing that the child was placed with the foster family that has adopted his siblings. The child has been placed in this home since April 1, 2013 and is the only home he has ever known. The foster parents are the only parents the child knows and they wish to adopt him if the permanent custody was granted. The child is very bonded to the foster parents and no bond exists between the child and Mother. The caseworker testified that she believed it was in the best interest of the child that the permanent custody be granted to the SCJFS.

{¶11} Mother testified that if she does not have independent housing when released from SRCCC she will live with her sister in East Canton. Mother also has the opportunity to go to the YMCA, but that choice would extend her involvement with SRCCC and is not stable. Mother testified that her desire is to have more time to complete case plan services and ultimately have placement of her child.

{¶12} On April 22, 2014, the trial court filed Findings of Fact and Judgment Entries, which terminated the parental rights of Mother and granted permanent custody of N.C.P. to SCJFS.

### Assignments of Error

{¶13} On appeal, Mother asserts the following assignments of error,

{¶14} "I. THE JUDGMENT OF THE TRIAL COURT THAT APPELLANT ABANDONED THE MINOR CHILD WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶15} "II. THE COURT'S ORDER STATING THAT [N.C.P.] COULD NOT BE PLACED WITH ANY BIOLOGICAL PARENT AT THE TIME OF TRIAL OR WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

I & II

{¶16} Because we find the issues raised in Mother's first and second assignments of error are closely related, for ease of discussion, we shall address the assignments of error together.

***A. Burden Of Proof***

{¶17} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169(1990), *quoting Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551(1972). A parent's interest in the care, custody and management of his or her child is "fundamental." Id.; *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599(1982). The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45(6th Dist.1991). Therefore, parents "must be afforded every procedural and substantive protection the law allows." Id.

{¶18} An award of permanent custody must be based upon clear and convincing evidence. R.C. 2151.414(B)(1). The Ohio Supreme Court has defined "clear and

convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23 (1986).

### B. Standard of Review

{¶19} The Ohio Supreme Court has delineated our standard of review as follows,

> Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof. See *Ford v. Osborne*, 45 Ohio St. 1, 12 N.E. 526, *Cole v. McClure*, 88 Ohio St. 1, 102 N.E. 264, and *Frate v. Rimenik,* 115 Ohio St. 11, 152 N.E. 14.

*Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954). A court of appeals will affirm the trial court's findings "if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." *In re Adkins,* 5th Dist. Tuscarawas Nos. 2005AP06–0044 and 2005AP07–0049, 2006-Ohio-431, ¶17, *rev'd on other grounds, In re D.A*. 113 Ohio St.3d 88, 2007-Ohio-1105,  862 N.E.2d 829.

{¶20}  In *Cross*, the Supreme Court further cautioned,

The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.* See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added).

### *C. Requirements for Permanent Custody Awards*

**{¶21}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶22}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b) the child is abandoned;

(c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

**{¶23}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**1). Abandonment-R.C. 2151.414(B) (1) (b).**

**{¶24}** R.C. 2151.011(C) states that, for purposes of R.C. Chapter 2151, "a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days."

**{¶25}** However, R.C. 2151.011(C) merely creates a presumption of abandonment, which a parent may rebut. See *In re Cornell,* 11th Dist. Portage No. 2003-P-0054, 2003-Ohio-5007, fn. 2; *In re Phillips,* 11th Dist. Ashtabula No. 2005-A-0020, 2005-Ohio-3774, ¶ 32. While the statute does not provide a definition," '[a]bandonment' of a child has been defined as any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child." *Baker v. Rose*, 28 Ohio Misc. 200, 203, 270 N.E.2d 67(C.P. 1970), citing, *In re Masters*, 165 Ohio St. 503, 505-506, 137 N.E.2d 752(1956). See, also *In re C.E.,* 2nd Dist. Champaign No. 2005-CA-11, 2005-Ohio-5913, ¶ 12.

**{¶26}** "A presumption effectively reverses the burden of coming forward with evidence to support a proposition of fact, causing the fact to be deemed established unless sufficient proof is presented to rebut the presumption. Once the presumption is rebutted, however, the presumption disappears. *Evans v. National Life & Acc. Ins. Co.,*

22 Ohio St.3d 87, 488 N.E.2d 1247(1986), first paragraph of syllabus. Whether sufficient proof has been presented to rebut, or 'unseat,' a legal presumption is an issue of law for the court. *Beresford v. Stanley*, 6 Ohio N.P. 38, 9 Ohio Dec. 134, 1898 WL 763." *In re C.E.,* supra, ¶14.

**{¶27}** We recognize that if Mother attempted to visit N.C.P. but was prevented from doing so by SRCCC, it would be difficult to conclude that her actions were the equivalent of abandonment. *See In re Adoptions of Groh*, 153 Ohio App.3d 414, 424, 794 N.E.2d 695(7th Dist. 2003). However, the trial court in the case sub judice, after hearing testimony, did not find that SRCCC interfered with Mother's ability to have attempted visitation.

**{¶28}** Mother admitted that she was incarcerated at the Stark County Jail from November 24, 2013 until January 21, 2014. Mother claimed that she had left voice mail messages for the caseworker but the caseworker never contacted mother to schedule a visit. The trial court found that Mother was again incarcerated, this time at SRCCC, beginning March 27, 2014 with a release date six months in the future.

**{¶29}** Because the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony, we must give deference to the trial court's findings of fact. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273(1984).

**{¶30}** Based upon the foregoing, as well as the entire record in this case, we find that Mother did not provide sufficient evidence to rebut the presumption of abandonment, as contained in R.C. 2151.011(C). *In re Cornell* at ¶20; *In re Cravens*,

3rd Dist. Defiance No. 4-03-48, 2004-Ohio-2356, ¶23; *In re Bailey Children*, 5th Dist. Stark No. 2004 CA 00386, 2005-Ohio-2981, ¶ 32.

**2). Parental Placement within a Reasonable Time- R.C. 2151.414(B) (1) (a).**

**{¶31}** The court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C. 2151.414(E). The statute also indicates that if the court makes a finding under R.C. 2151.414(E) (1) – (15), the court shall determine the children cannot or should not be placed with the parent. A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. See *In re: William S.,* 75 Ohio St.3d 95, 1996-Ohio-182, 661 N.E.2d 738; *In re: Hurlow*, 4th Dist. Gallia No. 98 CA 6, 1998 WL 655414(Sept. 21, 1998); *In re: Butcher*, 4th Dist. Athens No. 1470, 1991 WL 62145(Apr 10, 1991).

**{¶32}** R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Specifically, Section (E) provides, in pertinent part, as follows:

> (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear

and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of

this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

(3) The parent committed any abuse as described in section 2151.031 of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

(5) The parent is incarcerated for an offense committed against the child or a sibling of the child;

(6) The parent has been convicted of or pleaded guilty to an offense under division (A) or (C) of section 2919.22 or under section 2903.16, 2903.21, 2903.34, 2905.01, 2905.02, 2905.03, 2905.04, 2905.052907.07, 2907.08, 2907.09, 2907.12, 2907.21,2907.22, 2907.23, 2907.252907.31, 2907.32, 2907.321, 2907.322, 2907.323, 2911.01, 2911.02, 2911.11, 2911.12,2919.12, 2919.24, 2919.25, 2923.12, 2923.13, 2923.161, 2925.02, or 3716.11 of the Revised Code and the child or a sibling of the child was a victim of the offense or the parent has been

convicted of or pleaded guilty to an offense under section 2903.04 of the Revised Code, a sibling of the child was the victim of the offense, and the parent who committed the offense poses an ongoing danger to the child or a sibling of the child.

(7) The parent has been convicted of or pleaded guilty to one of the following:

* * *

(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.

(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.

(10) The parent has abandoned the child.

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section or

2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.

(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

(15) The parent has committed abuse as described in section 2151.031 of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.

(16) Any other factor the court considers relevant.

{¶33} As set forth above, the trial court's findings are based upon competent credible evidence. The record includes the recommendation of the Guardian Ad Litem for the child, and the testimony of the witnesses at trial. The trial court was in the best position to determine the credibility of the witnesses.

{¶34} Mother was incarcerated and would not be released for several months after the permanent custody hearing. Mother failed to complete the Goodwill Parenting Program. Mother was terminated from Quest treatment for non-compliance. Mother failed to comply with random urine drug test and refused to obey a court order dated September 24, 2013 for a hair follicle drug test. The last drug test Mother submitted to the worker was positive for cocaine. Mother did not keep in contact with the caseworker. Mother did not have independent housing or employment on the day of trial. Mother failed to complete the case plan requirements in two past cases and she stipulated to the grant of permanent custody to the SCJFS of those children.

{¶35} The evidence demonstrated the successful efforts Mother had made on the case plan. On that point, the evidence demonstrates that any improvement that Mother has made in her life is tentative and, perhaps, temporary, and that she is at risk of relapse. The trial court found that, regardless of Mother's compliance with aspects of her case plan, she was still not able to be a successful parent to N.C.P.

{¶36} In the case of *In re: Summerfield*, 5th Dist. Stark No. 2005CA00139, 2005-Ohio-5523, this court found where, despite marginal compliance with some aspects of the case plan, the exact problems that led to the initial removal remained in existence, a court does not err in finding the child cannot be placed with the parent within a reasonable time.

{¶37} Based upon the foregoing, as well as the entire record in this case, the Court properly found N.C.P. could not or should not be returned to Mother within a reasonable time. Despite offering numerous services, Mother was unable to mitigate the concerns that led to the child's removal.

### D. The Best Interest of the Child

{¶38} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶39} The focus of the "best interest" determination is upon the child, not the parent, as R.C. 2151.414(C) specifically prohibits the court from considering the effect a grant of permanent custody would have upon the parents. *In re: Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424(8th Dist.1994). A finding that it is in the best interest of a child to terminate the parental rights of one parent is not dependent upon the court making a similar finding with respect to the other parent. The trial court would necessarily make a separate determination concerning the best interest of the child with respect to the rights of the mother and the rights of the father.

**{¶40}** The trial court made findings of fact regarding the children's best interest. It is well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re: Mauzy Children*, 5th Dist. Stark No. 2000CA00244, 2000 WL 1700073(Nov. 13, 2000), *quoting In re Awkal*, 95 Ohio App.3d 309, 316, 642 N.E.2d 424(8th Dist. 1994).

**{¶41}** As an appellate court, we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence, upon which the fact finder could base its judgment. *Cross Truck v. Jeffries,* 5th Dist. Stark No. CA-5758, 1981 WL 6321(Feb. 10, 1982). "Reviewing courts should accord deference to the trial court's decision because the trial court has had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections that cannot be conveyed to us through the written record, *Miller v. Miller*, 37 Ohio St. 3d 71, 523 N.E.2d 846(1988).

**{¶42}** In the present case, the trial court's decision indicates it considered the best interest factors. Upon review of the record, it is clear that the record supports the trial court's finding that granting the motion for permanent custody is in N.C.P.'s best interest. The trial court concluded the child's need for legally secure placement could not be achieved without awarding permanent custody to SCJFS

**{¶43}** The record makes clear that Mother failed to complete the majority of the case plan provided by SCJFS and failed to meet even the basic needs of N.C.P.

{¶44} Mother failed to maintain stable housing. Mother failed to maintain stable employment. Mother failed to maintain her sobriety, and further, was incarcerated for much of the time.

{¶45} The record does not demonstrate that if she had been offered different case plan services, the result would have been different.

### E. Conclusion

{¶46} For these reasons, we find that the trial court's determination that Mother had abandoned the child and had failed to remedy the issues that caused the initial removal and therefore N.C.P. could not be placed with her within a reasonable time or should not be placed with her was based upon competent credible evidence and is not against the manifest weight or sufficiency of the evidence. We further find that the trial court's decision that permanent custody to SCJFS was in the N.C.P.'s best interest was based upon competent, credible evidence and is not against the manifest weight or sufficiency of the evidence.

{¶47} Because the evidence in the record supports the trial court's judgment, we overrule Mother's two assignments of error, and affirm the decision of the Stark County Court of Common Pleas, Family Court Division.


By Gwin, P.J.,

Delaney, J., and

Baldwin, J., concur